## PERRY v. AMERICAN HECOLITE DENTURE CORPORATION.

### No. 10247.

Circuit Court of Appeals, Eighth Circuit.

Sept. 19, 1935.

John E. Stryker, of St. Paul, Minn. (John E. Stryker, Jr., of St. Paul, Minn., on the brief), for appellant.

Francis E. Marsh, of McMinnville, Or. (Wilbur, Beckett, Howell & Oppenheimer, of Portland, Or., and Paul, Paul & Moore, of Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

The American Hecolite Denture Corporation brought this suit in equity against David Perry setting up two causes of action. The first cause of action was based on the claim that the defendant was guilty

of unfair competition in connection with the sale of denture blanks in that he falsely represented to the dental trade that he was selling denture blanks of the plaintiff company. In the second cause of action the defendant is charged with infringing the plaintiff's trade-marks under the Act of February 20, 1905 (33 Stat. 724, as amended, 15 USCA §§ 81–109). Besides injunctional relief, plaintiff prayed for damages and accounting.

It appears that the plaintiff is a corporation organized under the laws of Oregon and that the defendant is a citizen of Minnesota with his principal place of business at Minneapolis, and more than $3,000 is involved.

About February 18, 1925, a German corporation known as Heko-Werk Chemische Fabrik A–G adopted the trade-mark "Hekolith" applied to the plastic material it manufactured for making prosthesis and artificial dentures for false teeth. It sold a small amount of this product in the United States, but in about August of 1926, Doctor Leif Underdahl, a dentist residing at Portland, Or., acquired from the Heko-Werk Company the exclusive selling rights in the United States. He continued to sell the product until October, 1926, when he organized the plaintiff corporation and transferred his selling rights to it. Since that time the corporation has continuously bought the product from the Heko-Werk Company and sold it in interstate commerce in the United States. On March 22, 1927, the Heko-Werk Company filed application for registration of the trade-mark Hekolith in the United States patent office in connection with its material, the registration having been granted on December 27, 1927, and being still in force.

On April 8, 1927, the Heko-Werk Company, by written agreement with the plaintiff, constituted the plaintiff its exclusive agent, for ten years, to sell Hekolith in the United States and Canada, agreeing to supply the plaintiff with the material, and that it would not sell to others, but would use every means in its power to protect the exclusive agency of the plaintiff. The agreement contained the provision: "The Heko-Werk will protect its sole agents but cannot be made responsible if the material without their knowledge and fault is supplied from any other unknown source." The contract has remained in force.

The plaintiff adopted the word "Hecolite" in the name of its corporation and applied it to the product it was selling interchangeably with "Hekolith." Hecolite is Hekolith anglicized or translated, and the word "Hecolite" is said by Dr. Underdahl to "have more sound than 'Hekolith.'" "It has a better range to it than 'Hekolith.'" The plaintiff labeled the box in which the denture blanks were shipped: "Hecolite—The crowning achievement of creative chemistry and dental art." At first common boxes were used, but later plaintiff put the dentures up in distinctive little green boxes. The blanks themselves had embossed thereon by the manufacturer "Hekolith," size numbers, and the words "Made in Germany" in both the French and the English languages. The plaintiff put no markings of its own upon the denture blanks. It does not appear that the plaintiff, in selling or shipping Hecolite or Hekolith ever attached to the goods or containers any notification of trade-mark registration, except that in the early part of 1932, about the time this suit was brought, the plaintiff put on the inside cover of its boxes "Hecolite is a trade-mark of the American Hecolite Denture Corporation and is registered in the United States Patent Office. Products not imported and distributed by the American Hecolite Denture Corporation constitute an infringement thereof." The denture material and blanks were referred to in the trade as either "Hekolith" or "Hecolite." The plaintiff not only made selections and rejections out of the denture blanks received from the German manufacturer, but also subjected the blanks which it offered for sale to a secret process, something like drying out lumber, which greatly improved them. It also made immediate replacement of any plates claimed to be defective.

By assignment dated December 12, 1929, in Germany, and recorded in the United States Patent Office January 21, 1930, Heko-Werk assumed to transfer to plaintiff the entire title and interest in and to its Hekolith trade-mark, together with the good will of the business appurtenant thereto in the United States, the plaintiff having, on September 19, 1929, itself applied for registration of the trade-mark "Hecolite," obtaining certificate of registration on December 23, 1930. The document offered to evidence the assignment of the trade-mark Hekolith to the plaintiff is acknowledged by one Hengstmann, said to be "Direktor" of the German corporation, as his act and deed, but there is no acknowledgment that the signing was

the act and deed of the corporation. The document also lacks certification that it is acknowledged according to the laws of the country (Germany) in which it was executed. (Act of Feb. 20, 1905, § .10, 15 USCA § 90.) A further document executed in Germany offered as a ratification of the assignment by the German corporation similarly lacks acknowledgment of the corporation and certification of conformity to the German laws. Plaintiff expended large sums of money in advertising the denture blanks in this country and in demonstrating their uses and advantages, and had built up a large business in them in the United States and had sold more than 2,000,000 at the time of trial. In all of the advertising, demonstrating, and selling done by the plaintiff the name "Hecolite" was always applied to the denture blanks.

The defendant, David Perry, has been in the dental supply business for 45 years, selling to dealers and dentists and having a mailing list of some 8,000 prospective customers, and between August 3, 1928, and September, 1928, he bought around 2,000 Hecolite denture blanks from the plaintiff for resale. He was then fully informed of the exclusive selling rights the plaintiff had acquired from the German manufacturer and of the plaintiff's extensive advertising, but, as he found out that he could buy the blanks even from retailers in Germany and sell them in this country far below the prices maintained here, he determined to do so. He applied to the Heko-Werk Company in Germany, but that company refused to sell to him and referred him to their sole agent in America, the plaintiff. He succeeded, however, in buying supplies of the genuine blanks in Germany and circularized his customers in regard to them. Through such advertising and otherwise he has sold a large number of the denture blanks, which he imported, throughout the states of Minnesota and the Northwest in interstate commerce, and in selling such blanks he has represented them to the trade to be Hecolite blanks; they being embossed with the manufacturer's trade-mark "Hekolith" exactly as were those sold by the plaintiff. There is no claim that he ever handled anything but the genuine product of the Heko-Werk Company. Not knowing of any trade-mark registered in this country covering the material or the denture blanks, he applied for registration of the trade-mark "Hekolith" in his own name, and his application was passed to issue and pub-

lished, but was subsequently rejected on account of the prior issuance of the certificate to the German manufacturing company. Perry sold the blanks for less than $2, against the price maintained by the plaintiff of around $3, and his competition was injurious to the plaintiff.

The trial court found that Perry was guilty of unfair competition against the plaintiff and also of infringment of the plaintiff's trade-marks, and issued injunction and ordered accounting.

It appeared on the trial that Hecolite is only one of a great many denture blank materials that have come on the American market made up from material more like celluloid than rubber composition, and Perry is now handling one that he calls "Perolite," having no intention to sell any more Hecolite. He consented to an injunction so far as Hecolite or Hekolith was concerned, but insisted that he had not infringed under the Trade-Mark Act, nor competed unfairly with the plaintiff, and that he was not subject to an accounting. Such are his contentions on this appeal.

We consider first the alleged cause of action based upon the Trade-Mark Act.

■ Such a suit rests "on the ownership of the trade-marks" and "title to the trade-marks is indispensable to a good cause of action." Shaver v. Heller & Merz Co. (C. C. A. 8) 108 F. 821, 826, 65 L. R. A. 878; Krauss v. Jos. R. Peebles' Sons Co. (C. C.) 58 F. 585; Hopkins on Trade-marks, Tradenames & Unfair Competition (3d Ed.) § 175; 63 Corpus Juris, § 535. The statute reads "any person who shall, without the consent of the owner thereof, reproduce * * * any such trade-mark and affix the same to merchandise" and shall use the same in interstate commerce "shall be liable to an action for damages therefor at the suit of the owner thereof." 15 USCA § 96. Until December, 1929, the trade-mark "Hekolith" belonged to and was registered in the United States patent office in the name of the German manufacturer as the owner thereof, and the plaintiff has made no claim to any ownership therein prior to that date. Its only claim to ownership is based upon the documents which it offered in evidence purporting to show an assignment and ratification of assignment of the trade-mark from the German corporation, dated December 12, 1929, and September 1, 1932, respectively. As these documents were neither acknowl-

edged nor certified, as required by the provisions of the Trade-Mark Act, the objection which defendant made to their reception in evidence should have been sustained. (Act of February 20, 1905, § 10, 15 USCA § 90.) Absent these documents, there was not sufficient proof to establish the ownership of the trade-mark Hekolith in the plaintiff, as required by the act.

■ If the plaintiff had become the owner of the trade-mark by properly evidenced assignment thereof from the owner, it would have had the duty under the Trade-Mark Act to give notice to the public that the trade-mark was registered by affixing "Reg. U. S. Pat. Off." Section 28, Act of February 20, 1905, 15 USCA § 107, title 15 USCA § 105, p. 413. "Otherwise on a suit for infringement no damages shall be recovered except on proof that the defendant was duly notified of infringement, and continued the same after such notice." Id. The plaintiff did not affix to the denture blanks which it sold a notice of registration of Hekolith, as prescribed in the statute by label or otherwise, but claims that Perry was "duly" notified of infringement and continued the same after such notice. Although the trial court so found, it appears to us that the testimony in the record is insufficient to sustain the finding.

We do not find that the plaintiff ever brought notice home to Perry that the plaintiff was the owner of the trade-mark "Hekolith" either while the mark stood registered in the name of the German manufacturer or after the plaintiff had taken the purported assignment thereof. Without such notice brought home to him, Perry had no reason to believe that his sale of the denture blanks with that mark embossed upon them by the manufacturer would constitute an infringement of any registered trade-mark belonging to the plaintiff. As the plaintiff did not comply with the duty of labeling the denture blanks with the prescribed words of notification and did not "duly" notify Perry that it was the assignee or owner of the trade-mark, it could not maintain against Perry the suit allowed by the Trade-Mark Act to the owner by assignment of a trade-mark registered under the act. The statutory action is one in which recovery up to treble the amount of actual damage may be had, but the requirements of the statute to be met by the plaintiff cannot be disregarded by the courts.

■■ Plaintiff contends that as to its registered trade-mark "Hecolite," it stands in more favorable position. But we do not agree so far as the statutory action is concerned. Hecolite being merely a translation of the German Hekolith, and, therefore, "identical with the registered trade-mark," its registration in the name of the plaintiff should not have been allowed by the Patent Office and was not allowed until after the plaintiff had acquired the purported assignment to it of the German manufacturer's original registered trade-mark "Hekolith." Dadirrian v. Yacubian (C. C. A. 1) 98 F. 872, 873, affirming (C. C.) 72 F. 1010; Selchow v. Chaffee & Selchow Mfg. Co. (C. C. N. Y.) 132 F. 996; 15 USCA § 104, and page 402. Plaintiff's rights under the statute in the mark "Hecolite" were dependent upon and secondary to its statutory rights in the mark "Hekolith," and from which "Hecolite" was derived by translation.

■ By the Tariff Act of June, 1930, 19 USCA § 1001 et seq. (re-enacting corresponding provisions in the Tariff Act of 1922, 42 Stat. 858) the domestic owner of a trade-mark for foreign made goods is given further and complete protection against importations of such goods without his consent, including a right to injunction and accounting. But not only must ownership of the trade-mark be shown, but filing thereof with the Treasury Department as provided in the Act. (19 USCA § 1526.) We conclude that the plaintiff, not having made out a case under the statute, the trial court should have denied an accounting for damages under the second cause of action and the decree upon the second cause of action is modified accordingly.

■ The plaintiff's suit for unfair competition presents the question whether Perry sold the Hekolith marked denture blanks that he bought in Germany in such a way or under such circumstances as to induce belief that they came from the Hecolite Company. It was encumbent on plaintiff to show that Perry had "palmed off his blanks as those of the plaintiff"; that he was guilty of "passing off" as it is called in the English law books. A. L. A. Schechter Poultry Corporation v. United States, 55 S. Ct. 837, 79 L. Ed. ——, 97 A. L. R. 947; Warner & Co. v. Eli Lilly & Co., 265 U. S. 526, 531, 44 S. Ct. 615, 68 L. Ed. 1161; Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 413, 36 S. Ct. 357, 60 L. Ed.

713; Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 674, 21 S. Ct. 270, 45 L. Ed. 365; Queen Mfg. Co. v. Isaac Ginsberg & Bros. (C. C. A. 8) 25 F.(2d) 284; Wirfs v. D. W. Bosley Co. (C. C. A. 8) 20 F.(2d) 632; Pyle National Co. v. Oliver Electric Co. (C. C. A. 8) 281 F. 632; A. Leschen & Sons Rope Co. v. Fuller (C. C. A. 8) 218 F. 786; Allen B. Wrisley Co. v. Iowa Soap Co. (C. C. A. 8) 122 F. 796; Wolf Bros. & Co. v. Hamilton-Brown Shoe Co. (C. C. A. 8) 206 F. 611; Sweet Sixteen Co. v. Sweet "16" Shop, Inc. (C. C. A. 8) 15 F.(2d) 920; Buzby v. Davis (C. C. A. 8) 150 F. 275, 10 Ann. Cas. 68. The plaintiff says that it had built up the only market for the dentures and the only business in them that existed in this country by means of its own industry and advertising, and that the trade-marks Hecolite and Hekolith in connection therewith indicated to the public understanding that the goods came from the plaintiff, although not made by it. On the other hand, Perry contends that all the plaintiff's trading in the denture blanks was on the merit of the German manufacture, and the reputation of the German chemists, who had produced "the crowning achievement of creative chemistry and dental art." He denies that either those who bought the blanks or those who used them identified the plaintiff with them in any way.

We do not find among the many cases cited to us from the federal reports any cases where exclusive sales agents for foreign made trade-marked goods have obtained accounting for unfair competition in the same genuine goods under directly analogous circumstances to those here present.

Bourjois & Co. v. Katzel, 260 U. S. 689, 43 S. Ct. 244, 67 L. Ed. 464, 26 A. L. R. 567, is conclusive authority that an importer of foreign made goods who sells them in this country under trade-marks which he owns may so label his goods and advertise his business that the trade-marks come, by public understanding, to indicate that the goods bearing the trade-mark come from him, though not made by him. Thereupon his monopoly of the trade-mark in this country becomes complete to the extent that neither the foreign manufacturer himself nor a vendee through him can lawfully sell the trade-marked **goods in** competition in this country.

In Prestonettes, Inc., v. Coty, 264 U. S. 359, 44 S. Ct. 350, 351, 68 L. Ed. 731, the Supreme Court made it clear that an owner of foreign made trade-marked goods does not have the right to prohibit a purchaser of the goods, who repacks and sells them with or without added ingredients, from using the name on his own label to show the true relation of the trade-marked product to the article he offers, provided the name be not so printed or otherwise as to deceive the public. "If a man bought * * * a demijohn of Old Crow whisky, he certainly could sell the * * * whisky in bottles, and tell what it was, if he stated that he did the * * * bottling." Such a right accrues "by virtue of * * * ownership." "When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo." Id.

But in neither of these cases is there discussion of what facts must be shown in order to create a public understanding inuring to an exclusive sales agent who imports foreign made trade-marked goods that the goods have come from him, though not made by him.

From the English cases cited it appears to be well settled in England, in accord with our own decisions, that an exclusive sales agent of foreign made trade-marked goods may so carry on his business of selling the goods in the country of import as to there create a public understanding that the goods have come from him, though not made by him. Imperial Tobacco Company of India, Ltd., v. Bonnan (1924) 41 Reports of Patent Cases, 441; Richards v. Butcher, 7 Reports of Patent Cases, 288; Dental Mfg. Co., Ltd., v. C de Trey & Co. (K. B. Div. 1912) 29 Reports of Patent Cases, 617; C. G. Vokes, Ltd., v. J. F. Evans and Marble Arch Motor Supplies, Ltd. (1931) 49 Reports of Patent Cases, 140. It is also held that in a proper case an action for "passing off" would be available as a protection to such an exclusive agent. (Id.) The English cases also suggest as a test to determine whether an exclusive sales agent of foreign made goods has brought himself into position to avail of such remedy, that the inquiry be made what, if anything, there was to identify the agent with the articles dealt in by him which was used to induce the purchaser to buy them; "what, if any, peculiar feature either in get-up or shape or whatever

it may be." Was there anything about the goods which by way of get-up says to the purchaser: "This is a thing for which (the sales agents) are responsible, not necessarily as makers, but as persons who have dealt in it and who guarantee its quality to you." It appeared in the English cases cited that the sales agents had sold entirely on the reputation of the makers of the goods and so could not maintain suit for "passing off."

But we think that in this case the peculiar features are found which are necessary to identify the plaintiff with the denture blanks sold but not made by it. The particular material out of the mass of kindred products on the market as it was imported, advertised, demonstrated, and sold by the plaintiff, selected, processed, and put up in the distinctive little green box, vouched for and replaced whenever complained against and given the name with the better sound, "Hecolite," became completely identified in the public mind as coming from the Hecolite Company, the plaintiff, though it was not the maker nor claimed to be. The plaintiff has the "get-up of its own under which it sells" which qualifies it to maintain the suit for unfair competition. Although the plaintiff did not originate the word "Hecolite," but merely translated, anglicized, or revamped it from "Hekolith," plaintiff alone of all the world adopted and made use of Hecolite to designate the goods it sold. Doubtless Hekolith could have been anglicized in many other ways. The plaintiff did it in its own way. It also exercised selection in putting out the blanks which it sold under the name Hecolite and, in addition, it processed the blanks. As a result, the product sold by the plaintiff and identified as belonging to it by the name Hecolite, although it was made in Germany and was embossed with the trade-mark "Hekolith," was, in fact, a superior article. Gillette Safety Razor Co. v. Franks, 41 Reports of Patent Cases, 499; Spalding & Bros. v. Gamage, Ltd. (1918) 35 Reports of Patent Cases, 101; Teacher v. Levy (1905) 23 Reports of Patent Cases, 117; Cheney Bros. v. Gimbel Bros. (D. C.) 280 F. 746; Russia Cement Co. v. Katzenstein (C. C.) 109 F. 314; 63 Corpus Juris, § 83. It was this superior product which the plaintiff had made known to the American trade and which the American trade had come to expect when Hecolite was offered. It follows that when Perry offered his importa-

tion of blanks and connected the name Hecolite with them he was guilty of unfair competition and subject to accounting. Nor is it any protection to Perry to say that he did not know all of the distinctive merits of the plaintiff's blanks. He was attempting to sell on the plaintiff's reputation and standing, as he had no right to do, and the inferiority of his blanks aggravated the damage to the plaintiff. Although Perry has denied calling his blanks "Hecolite," we think the finding of the trial court that he did so is sustained. Indeed, Perry testified: "I think I have sent out circulars with the name 'Hecolite' after I quit selling the blanks bought directly from the American Hecolite Denture Corporation."

It is ably presented on Perry's behalf that after he had bought and imported his Hekolith blanks he had a property right in them which included the right to sell them (passing over the Tariff Acts of 1922 and 1930, supra). The extent of such a right generally, as well as the limitations thereon which result from the rights which have accrued to others, are very fully considered in the cases cited. It is sufficient that he did not have the right to sell in such a way or under such circumstances as to induce belief or trade upon the understanding that the blanks came from the plaintiff or that they were identical with those sold by the plaintiff. Such deceits are actionable.

The decree upon the first cause of action is affirmed.