**KEYSTONE MACARONI MFG. CO. v. V. ARENA & SONS, Inc.**
**No. 10057.**

District Court, E. D. Pennsylvania.
Feb. 27, 1939.

S. Thomas Bulfamonte, of Norristown, Pa., for defendant.

. WELSH, District Judge.

The plaintiff, Keystone Macaroni Manufacturing Company, filed its bill of complaint to enjoin the defendant, V. Arena & Sons, Inc., from using a part of its trade mark which is alleged to be an infringement of plaintiff's trade mark. Plaintiff also avers that the use of such mark constitutes unfair·competition, and seeks an accounting and damages.

Both parties to the suit are Pennsylvania corporations, having their place of business at Lebanon and Norristown respectively, and are engaged in the manufacture and sale of spaghetti and similar products. The market of both concerns consists of the eastern seaboard states, with the largest distribution in and about Philadelphia. The plaintiff's business was begun in 1916 as a partnership. In 1919 one of the partners withdrew and the business was carried on as an individual proprietorship by the remaining partner until 1922, when it was incorporated. From the beginning of the business, plaintiff and its predecessors have used as their trade mark the name "San Giorgio" together with the picture of an armored knight mounted on a rearing horse and in the act of killing a dragon with his spear, the picture being surrounded by concentric circles to form a medallion. The plaintiff's predecessors registered the name and trade mark in the Patent Office in 1920. In 1924 the defendant adopted as its trade mark and name "Conte Luna" with a picture of a full moon between the words and also a picture of an armored knight grasping a spear and mounted on a rearing horse. About 1930 the defendant encircled the figure of the mounted knight in concentric circles forming a medallion which it applied to its packages in the same manner as the one used by the plaintiff. It is alleged that defendant's medallion is deceptively similar to that of the plaintiff and therefore an infringment of the registered trade mark.

The parties used their respective trade names and trade marks without any conflict until about 1934, during which period they did an extensive business in the same territory. About that time the plaintiff undertook to promote its sales by offering premiums for the return of the medallions on its packages. In the course of redeem-

Mercer B. Tate, Jr., of Philadelphia, Pa., for plaintiff.

ing the medallions for premiums, it discovered that many of those taken from the defendant's packages were also offered, and from that fact the plaintiff concluded that the similarity of the defendant's mark was causing a confusion of its goods with the goods of the defendant. In 1935 the plaintiff formally protested to the defendant against the use of the defendant's mark but the defendant, upon the advice of counsel, took the position that the use of its mark did not constitute an infringement and it declined to desist. This action followed in 1938.

An examination of both marks shows that they are similar in that the dominant figure in each is an armored knight grasping a spear and mounted on a rearing horse shown in a right side view. These figures are surrounded by two concentric circles of the same relative size and distance from the common center which enclose the figures in approximately the same relative position. The colors on the marks used by both litigants vary somewhat, depending upon the number of colors used and the size applied on the different packages. The marks differ in a number of details. The plaintiff's knight is partly enshrouded with a cloak which obscures some of the background. He is engaged in slaying a dragon beneath the horse by means of a spear held in both hands. The defendant's mark includes a background showing a castle, water and other scenery, beneath the horse is the brink of a cliff, and the knight is holding his spear aloft with his left hand. These are the essential differences in detail which distinguish the respective medallions, but they are not readily apparent upon a hasty glance nor would they be detected upon examination at a distance. The principal features and consequently the general impression of both marks is of a medallion containing an armored knight on a rearing horse, and, without attention being called to the differences of detail, it seems doubtful that an ordinary buyer, guided by his recollection of a mark rather than a name, might readily be confused. We can conceive that a person, carrying in mind the picture of a medallion with a mounted knight, and relying upon the memory of a package, might easily forget the details of the respective pictures and consequently select one brand instead of the other, and especially if he had not memorized the brand names or associated them with the respective manufacturers.

Evidence of actual confusion was confined to proof that the plaintiff's customers, in presenting medallions for redemption, have included among them many of the defendant's medallions. Such evidence establishes the probability of confusion and is admissible for that purpose, but it is not sufficiently persuasive to justify a definite conclusion that the goods of the parties are actually confused by the use of the similar marks. The presentation of defendant's medallions might indicate a desire on the part of some customers to fraudulently obtain premiums for medallions which they know are actually not redeemable, or it might mean that certain customers believe "Conte Luna" and "San Giorgio" brands are put out by the same manufacturer or that they make their choice by trade mark rather than by name, but we cannot say with assurance that confusion existed any more than we can say that actual fraud was intended. The brand names and other elements of the trade marks are so distinctive as to eliminate confusion in the minds of reasonably prudent buyers, especially those who purchase by name, but as pointed out by both parties, many users of these products are of foreign birth, and it seems desirable to prevent possible confusion in their minds as well as in the minds of others who might be induced to make their choice by mere visual impression of a symbol. It seems proper to conclude that confusion is possible and probable and, although it is unlikely that the confusion is general, the possibility or probability of confusion resulting from the use of the similar trade marks should be eliminated in the interest of fair dealing.

The more important questions presented are, first, whether the plaintiff is such an owner of its trade mark as to be entitled to the protection afforded by the Trade Mark Act, and second, whether the use of the mark by the defendant amounts to unfair competition such as might be restrained by this court. The Trade Mark Act of 1905, 15 U.S.C.A. § 81 et seq., the purpose of which is to aid legitimate commerce by preventing confusion of goods either as to origin or sale, provides that the registration of a trade mark shall be prima facie evidence of the registrant's ownership of the mark, and when a similar mark is applied to other like products, such application and use may be enjoined and damages may be recovered. We think that the marks in the present case are so

deceptively similar that if the Act applies, the injunction prayed for should be granted. The Act permits the registration of a lawful trade mark by the applicant user and provides that the trade mark may be assigned in connection with the transfer for the good will of the business in which the mark is used.

"Such assignment must be by an instrument in writing and duly acknowledged according to the laws of the country or State in which the same is executed; any such assignment shall be void as against any subsequent purchaser for a valuable consideration, without notice, unless it is recorded in the Patent Office within three months from date thereof. The commissioner shall keep a record of such assignments." (Sec. 10, 15 U.S.C.A. § 90.)

■ Under this provision the plaintiff, in order to be entitled to the remedies provided by the Act, must prove its title by assignments from the original registrants which conform with the requirements specified. The defendant contends that the plaintiff has not established such ownership and therefore is not entitled to the benefits of the Act by reason of the following circumstances: The trade mark was registered in 1920 upon the application of the partners, formerly trading as the Keystone Macaroni Company, made in 1919. Thereafter one of the partners withdrew and assigned his interest in the firm to the remaining partner. The assignment was not acknowledged. In 1922 the remaining partner then operating as an individual proprietorship incorporated his business and transferred all of the business assets including the trade mark to the corporation. This assignment or transfer likewise was not acknowledged. Therefore if the rights of the plaintiff are dependent upon the title to the trade mark acquired under these assignments, not acknowledged as required by the Act, we must deny the plaintiff the remedy sought. It has been held that title to the trade mark is indispensable to a good cause of action under the Trade Mark Act, Shaver v. Heller & Merz Co., 8 Cir., 108 F. 821, 65 L.R.A. 878, and that where the assignment of a trade mark has not been properly acknowledged in accordance with the requirements of the Act, the proof of the plaintiff's title, acquired by the assignment, has not been established. Perry v. American Hecolite Denture Corp., 8 Cir., 78 F.2d 556. So far as this action is a statutory one involving the infringement of a registered trade mark, we feel that the provisions of the Act are mandatory and must be complied with before the plaintiff is entitled to the remedies therein prescribed.

■ It appears, however, that the plaintiff and its predecessors have continuously used and claimed ownership of their trade mark since 1916 and that the present ownership is evidenced by the succession of business forms and assignments as above recited. These facts clearly establish the right of the plaintiff to claim its symbol as a common law trade mark. Trade marks and the rights of the owners have always been recognized at common law regardless of the existence or provisions of the registration act. The certificate of registration is proof of adoption but is not intended to be conclusive as to the validity of the mark, and the fact of registration or non-registration does not affect the jurisdiction of the court to determine the validity of the acts of appropriation and use. Bisceglia Bros. Corp. v. Fruit Industries, Ltd., D.C., 20 F.Supp. 564. Exclusive right to the use of a trade mark is founded upon priority of appropriation (McLean v. Fleming. 96 U.S. 245, 24 L.Ed. 828), exists as an appurtenance to a particular business with which it is connected and is established by the use rather than by its mere adoption or registration.

■ The defendant contends, however, that since the jurisdiction of this court was acquired by virtue of an alleged infringement of a federal trade mark, and the plaintiff has failed to prove technical title thereto, this court is without jurisdiction to determine the issue as to unfair competition inasmuch as there is no diversity of citizenship. In support of that contention defendant relies upon the authority of Perry v. American Hecolite Denture Corp., 8 Cir., 78 F.2d 556 which holds that a plaintiff who has failed to establish his title by an acknowledged assignment of a registered trade mark is not entitled to pursue the remedies provided in the Act. We note, however, that there the claimant's only right to the trade mark in question was acquired by virtue of the unacknowledged assignment, and the case does not control the issue of jurisdiction or redress where common law rights to a trade mark are involved. In the present case the plaintiff's proprietorship in the trade mark

in question is not based solely upon the technical validity of its assignments but is established by prior adoption and use over a period of many years. It would not seem logical or equitable for the Court to decline jurisdiction of one issue before it, merely because one of the parties has failed to support his position with regard to another. It is well settled that where a federal court has properly taken jurisdiction of an issue first presented, and later it is discovered that the basis of the jurisdiction cannot be sustained, the court may continue to retain jurisdiction for the purpose of determining the other issues involved in the litigation. In other words, where the complaint is based upon an alleged infringement of a trade mark registered under the Federal Statutes, and in the course of the trial it is found that the trade mark or its registration is invalid, the court might properly continue jurisdiction of the case for the purpose of determining the issue as to unfair competition. Hurn et al. v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Leschen & Sons Rope Co. v. Broderick, 201 U.S. 166, 26 S.Ct. 425, 50 L.Ed. 710; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195. Under these authorities we assume that our jurisdiction continues.

Prior discussion has directed attention to the similarity of the respective trade marks, the probability of confusion of products and their origin, and the rights of the plaintiff to protect its trade mark. Whether a remedy is to be granted and the extent of the redress requires some further comment on the law involved. The law of trade marks is part of the law of unfair competition and there are many cases involving the unlawful use of trade marks by persons other than those entitled thereto by prior use or registration. The wrong usually complained of is the sale or possible sale of the goods of one producer for those of another with the attendant loss of business by the persons entitled to it. Either actual or reasonably probable deception or confusion is contemplated and regard must be given to the class of persons who purchase the articles and to the circumstances ordinarily attending their purchase. N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 2 Cir., 77 F. 869. From the circumstance of this case, we have found that there is a reasonable probability not merely speculative, of confusion and de-

ception, and that the laws as to unfair competition are applicable. The similarity of adopted trade mark characters, together with the probability of confusion, is sufficient to justify the granting of relief even though the marks differ in detail. Pinaud, Inc. v. Huebschman, D.C., 27 F.2d 531–538; Jantzen Knitting Mills v. Spokane Knitting Mills, Inc., D.C., 44 F.2d 656; Gordon's Dry Gin Co. Ltd. v. Eddy & Fisher Co., D.C., 246 F. 954. The similarity of the respective marks of the plaintiff and defendant justify the granting of an injunction and damages unless, as contended by the defendant, the plaintiff has been guilty of laches in pursuing its remedy.

No efforts were made by the plaintiff to prevent the defendant from using its similar trade mark until the possible confusion was detected through the return of medallions for the premiums offered. Formal protest was made in July, 1935, and the rights of the plaintiff were promptly denied by the defendant. The suit, however, was not brought until 1938, a period longer than might be expected of a plaintiff vigilantly interested in protecting his rights. During that time defendant has by virtue of his belief in its legal position further extended its business, possibly with the conviction that the plaintiff had recognized the validity of its right to the mark in question. It would seem to us that, once having raised the issue of infringement, it was incumbent upon the plaintiff to pursue its remedy promptly, and the delay of almost three years before bringing suit is not the degree of vigilance which would entitle plaintiff to the full relief available under the law. Where two competing parties claim rights to the same or similar trade marks, priority of appropriation determines the question of which mark is entitled to protection (Amoskeag Mfg. Co. v. Trainer, 101 U.S. 51, 25 L.Ed. 993), but where the defendant used a similar mark or name with knowledge of the plaintiff's claim to the same, and the plaintiff delays or acquiesces in the unlawful use, the plaintiff may be entitled to injunctive relief but not to an accounting and damages. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526. Injunctive relief may be properly granted without requiring the court to decree an accounting and damages (Mosler v. Lurie, 2 Cir., 209 F. 364, 126 C.C.A. 290), and, as in the present case, an

accounting of profits will not be given where the unlawful use of the trade mark has been without any wrongful intent to defraud the plaintiff or deceive the public. Straus v. Notaseme Hosiery Co.; 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590; Saxlehner v. Siegel-Cooper Co., 179 U.S. 42, 21 S.Ct. 16, 44 L.Ed. 77.

Considering all of the circumstances and the equities of the parties, we are of the opinion that the defendant's use of that part of its trade mark which is similar to the plaintiff's mark should be restrained, but that no damages or accounting of profits should be decreed.