**GORT GIRLS FROCKS, Inc. v. PRINCESS PAT LINGERIE, Inc.**

Civ. 39–565.

District Court, S. D. New York.

May 12, 1947.

Katz & Heimowitz, of New York City (Simon Katz, of New York City, of counsel), for plaintiff.

Lackenbach & Hirschmann, of New York City (Armand E. Lackenbach, of

New York City, of counsel), for defendant.

CAFFEY, District Judge.

In this action, brought under the U. S. Trade Mark Act of February 20, 1905, Title 15 U.S.C.A. §§ 81–109, for infringement of plaintiff's registered trade-mark and for unfair competition, plaintiff moves, upon serving its complaint, for a preliminary injunction.

The trade-mark consists of the words "Princess Pat" underneath an heraldic emblem or shield. The two capital P's are in rather fanciful script; they look very much as though a capital P had been superimposed upon a capital L. The other letters have no particular distinctiveness. Registration was granted to Morris Silver on June 29, 1937, for "Children's and Junior Misses' Dresses, Gowns, Wraps, Coats, of all Kinds and of all Materials, and Hats, in Class 39, Clothing." It is alleged in the complaint that the trade-mark has been continuously used since July 16, 1936, first by plaintiff's predecessor, and then by plaintiff, in their business of designing, creating and selling at wholesale children's and junior misses' dresses, gowns, wraps of all kinds and of all materials.

Plaintiff asks that defendant be enjoined "from directly or indirectly manufacturing, selling, distributing or advertising its merchandise bearing the name, label or mark, 'Princess Pat,' or any corporate or business name containing the words, 'Princess Pat,' or any other mark or name which colorably imitates plaintiff's trade-mark."

To sustain an action for the infringement of a registered trade-mark it must appear that plaintiff owns the mark (Perry v. American Hecolite Denture Corporation, 8 Cir., 78 F.2d 556, 558), and also, of course, that the registration is valid. Although registration furnishes a presumption of both ownership and validity, it does not conclusively establish either, and both may be questioned in any action in which validity is relied upon, and the burden of proof is upon the plaintiff to establish these elements (House of Westmore, Inc., v. Denney, 3 Cir., 151 F.2d 261, 265, and James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 128 F.2d 6, 9). Where plaintiff's title rests upon an assignment from the original registrant, it has been held that the assignment must conform to the requirements of Section 90 of the Act, i.e., it must be in writing, duly acknowledged, and have been assigned in connection with the good will of the business in which the mark was used. Keystone Macaroni Mfg. Co. v. V. Arena & Sons, D.C.E.D.Penn., 27 F.Supp. 290, 293, and Perry v. American Hecolite Corporation, supra, 78 F.2d at pages 558, 559.

In his application for registration, dated September 5, 1936, Silver alleged that he "has adopted and used the trade-mark shown in the accompanying drawing for children's and junior misses' dresses," etc., and that "the trade-mark has been continuously used and applied to said goods since July 15, 1936." Defendant asserts that this was a false statement and that the trade-mark is, therefore, invalid. This assertion is based on a report upon plaintiff by Dun & Bradstreet, Inc., a mercantile agency, in which it is alleged that, upon the failure in June, 1933, of William Gort & Company, Inc., of which Silver was secretary and treasurer, Silver took employment with Moe Schwartz Corporation in the same line, but in late 1938 rejoined Gort, becoming treasurer of plaintiff. Although this report is mere hearsay, defendant, relying upon it, contends that Silver could not have been in business in 1936 and, therefore, could not have truthfully said that he had used the mark on children's and junior misses' dresses continuously since July 15, 1936.

Silver, who is now plaintiff's treasurer, replies that this report is erroneous; that the truth is that his business association with Mr. Gort, plaintiff's president, has been continuous and uninterrupted since July, 1936; that on September 5, 1936 he (Silver) had already been associated with plaintiff's predecessor, a New York corporation having the same name as plaintiff and engaged in the same line of business; and that since July 15, 1936, the trade-mark has been continuously used in connection with such goods. It will be noticed that he does not say by whom it was so used, or

that he himself was ever engaged in that line of business.

The complaint, however, which is verified by William Gort, plaintiff's president, alleges that plaintiff's predecessor adopted and began to use the trade-mark on all of its merchandise on or about July 15, 1936, and that it has been continuously used since then, at first by plaintiff's predecessor and then by plaintiff.

These statements as to use are too conflicting to justify a finding that Silver made a false statement in his application for registration. The presumption of validity, created by the registration of the mark, must prevail, for defendant has not overcome that presumption by competent evidence.

Next, in reliance upon the same report of Dun & Bradstreet, defendant asserts that plaintiff cannot be the owner of the trade-mark, for it could not have been assigned by Silver in connection with the good will of any business in which it was used by him, since he was not engaged in any business in 1936. In his affidavit Silver swears that upon the granting of the registration he executed and acknowledged an assignment of the trade-mark to plaintiff's predecessor; that it was prepared by a lawyer in this City, whom he has not been able to locate, the last heard of him being that he had been in the Armed Forces of the United States, and that many of the records of plaintiff's predecessor, of which the assignment was but a part, had been left with him. It will be seen that Silver does not say that the trade-mark was assigned in connection with the transfer of any business conducted by him—an essential element in the transfer of a trade-mark. The alleged assignment of the trade-mark may, therefore, have been a nullity. I am unwilling, however, upon such a meager record, to hold that plaintiff is not the owner of the trade-mark, for there are other and much stronger reasons for denying its motion for a preliminary injunction.

Plaintiff alleges in its complaint that for many years it and its predecessor have been engaged in the business of designing, creating and selling at wholesale "children's and junior misses' dresses, gowns, wraps of all kinds and of all materials." Its letterhead bears the words "Makers of Children's Dresses Six to Sixteen." The advertisements of its goods feature pictures of children and misses and refer to sizes, 2 to 16, 3 to 16, 1 to 3, 4 to 8, 3 to 6½, 7 to 14 and 10 to 16. When prices are stated (they appear to be retail prices), they are very low—$1.09, 59 cents, $1 and $2.98. Plaintiff's name does not always appear in the advertisements.

Defendant is a New York corporation, organized on December 1, 1944. It is the successor of a partnership having the same name, whose certificate was filed on February 1, 1944, and which then began to manufacture and sell lingerie for women, in sizes from 32 to 38, using the name "Princess Pat." In his affidavit defendant's president says that its merchandise is what is known in the trade as high quality "upstairs" merchandise; that it has always been sold at prices (evidently, also, retail prices) of approximately $5 and upwards to as much as $20 (although one advertisement shows a slip at $3.98); that the expression "upstairs" indicates that the merchandise is of the type and price sold only in the fine merchandise carrying departments of a retail establishment, whereas the term "downstairs" indicates to both the merchant and the consumer that the merchandise is of inferior quality, of extremely low price, usually sold in the basement "bargain" departments of retail merchandising establishments. The advertisements of its goods feature young women, not children or junior misses; prices are usually not stated; the words "Princess Pat Lingerie Co. Inc." appear in most, if not all, the advertisements.

As defendant contends, it is quite apparent that the merchandise manufactured and sold by the plaintiff and that manufactured and sold by the defendant are in fields far apart, that the price ranges are also far apart and that the consuming public who ultimately purchase the merchandise fall into completely different categories. No one who wishes to buy a child's or a junior misses' dress would ask to see

a woman's dress. Nor would a woman seeking to buy a dress for herself ask for a junior misses' dress, except in a case where she is so small that a woman's dress is too large for her. There is little danger that a purchaser, seeing "Princess Pat" labels on both women's and junior misses' dresses, would be confused or misled into a belief that both were made by the same manufacturer. Certainly, here, the reputation of plaintiff's dresses would not be endangered if the purchaser should be misled into the belief that the defendant's much higher priced dresses were manufactured by plaintiff. It might be different, if the situation were reversed.

In N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 2 Cir., 77 F. 869, 871, Judge Lacombe said: "Necessarily, in applying the test suggested, viz. the likelihood of deception of an 'ordinary purchaser exercising ordinary care,' regard must be had to the class of persons who purchase the particular article for consumption, and to the circumstances ordinarily attending their purchase."

Defendant has submitted several registrations of the words "Princess Pat", all issued prior to July 15, 1936, and all relating to Class 39, Clothing—(1) for dresses, issued to Nat Goldston & Co., Inc., of New York City on July 18, 1922, (2) for corsets, issued on May 17, 1921, to Parisian Cloak Co. of Kansas City, Mo., and (3) for hosiery for women, misses and girls, issued to F. A. Patrick & Co. of Duluth, Minn., on May 3, 1921. It has also shown registration of the words in California for women's lingerie on April 28, 1936, and also, both Federal and State and in Canada, prior to 1936, for other related merchandise, such as hair nets, ladies foot wear and cosmetics. In the Directory of Branded Textile Merchandise, published by the Textile World in 1926, the first three registrations above referred to are listed. It also appears in this Directory that the word "Princess" had been used, or registered, alone and in various combinations, for textile merchandise more than 30 times.

In the case at bar the facts are much the same as those in the case of Spiegel v. Zuckerman, C.C.S.D.N.Y., 175 F. 978. There the firm of H. Kottler & Co. had adopted the word "Princess", or the words "The Princess," as a trade name upon ladies shirt waists. They assigned the name and the good will of their business to plaintiffs and the latter obtained registration of the word "Princess," as a trade-mark, and brought suit against the defendants, doing business under the firm name of "The Princess Shirt Waist Manufacturing Company," to restrain them from infringing the trade-mark. It was shown in defense that, prior to the adoption of the name of Kottler & Co., others had used the name on shirt waists and as part of their corporate names or the names under which they did business, and it was held that plaintiffs had no exclusive right to use the word and an injunction was refused. The judgment was affirmed in Spiegel v. Zuckerman, 2 Cir., 188 F. 63, 64, where Lacombe, J., said: "By the terms of the statute (section 16 [15 U.S.C.A. § 96]) such certificate is made prima facie proof of ownership of the trade-mark; but such prima facie proof may be overcome, if it be made to appear that the applicant was not entitled to the particular trade-mark which he sought to appropriate. The testimony shows an extensive use of the word 'Princess' in connection with shirt waists, going back for several years—indeed, prior to the date named in the application (January 1, 1901), and prior to the earliest date to which complainants have been able to show their own use of it, by persuasive testimony. Many different persons used it, in many different places. It is not necessary to find that any one of these has used the word as a trade-mark so long and so continuously that he, rather than complainants, is entitled to exclusive ownership. It is quite sufficient to dispose of this appeal to find, as we do and as the Circuit Court found, that in and prior to 1901 the word 'Princess' was being used by so many different persons in connection with the sale of shirt waists and similar garments, and had been so used for so long a time, that complainants could not, by adopting it as a mark for their own goods, acquire any exclusive right to its use as such mark."

Compare American Steel Foundries v. Robertson, 269 U.S. 372, 383, 384, 46 S.Ct. 160, 70 L.Ed. 317.

In Hopkins on Trade-marks, Trade Names and Unfair Competition, 4th Ed., p. 415, it is said: "The fact that the complainant's trade-mark is registered does not deprive the public of the right to use a similar mark which was common to the trade before the registration."

The case here is also very similar to the case of Arrow Distilleries v. Globe Brewing Co., 4 Cir., 117 F.2d 347. There the Distilleries Company had registered the word "Arrow" as a trade-mark for its alcoholic cordials and liqueurs and the Brewing Company had registered the same word as a trade-mark for its beer and ale. Each claimed infringement of its mark by the other. The District Court held that each was the owner of a valid trade-mark, as applied to alcoholic beverages, and that each was entitled to its exclusive use in those states in which it was the first user and it enjoined each from using the mark on alcoholic beverages of any description in those states in which the other was found to be the prior user. It also enjoined the Distilleries Company from employing its corporate title in connection with alcoholic beverages of any description in those states in which the Brewing Company was the prior user, unless its labels should have a notation indicating that the Distilleries Company had no connection with the manufacture of Arrow beer. In reversing the District Court, the Court of Appeals said (117 F.2d at page 349 right column, first paragraph): "The crucial issue in the case is whether the word 'Arrow' is a word of such distinctive character, when adopted as a trade-mark for one kind of intoxicating liquors, that it cannot be used on any other kind without creating the belief that both spring from a common source; or, on the other hand, is a word like 'Standard', or 'Gold Medal', or 'Blue Ribbon', which has been adopted by many persons as a trade-mark for articles of divers kind that it does not signify the goods of any one user. The question is important because, in determining the extent of the field of exclusive occupation, a name in the first class is accorded liberal treatment in the law of trade-marks, while a name in the second class is narrowly restricted to the particular kind of goods for which it is used by its owner."

Then, after a review of cases in both classes, the court said (117 F.2d at page 351 right column, last two paragraphs):

"The word 'Arrow' is in very common use as a trade-mark. The word itself or the pictorial representation of an arrow has been registered ninety-eight times as a trade-mark for various articles, * * * Nine times it has been registered for alcoholic beverages, including ale, beer and whiskey. Obviously the word has a common appeal to advertisers, * * *.

"We think it belongs to the class of trade-marks whose exclusive field is closely restricted. The inferences, to which the name naturally gives rise, have encouraged so wide a use and so frequent a registration for many different articles that there is little danger that its mere use, even in the closely related fields of beers and cordials, will indicate a common origin or endanger the reputation of the plaintiff's goods."

In my opinion the words "Princess Pat" belong in the second class referred to in this opinion. They have been registered more than 30 times for textile merchandise and, undoubtedly, many more times for other articles. It is said in one of the affidavits submitted by defendant that its use as a trade-mark is "explained by the popularity, during and after the first World War, of the royal personage actually known as 'Princess Pat,' who was a widely publicized member of the British royal family, active as a social worker among the soldiers of the British forces." And it will be observed that most of the registrations of the words "Princess Pat," referred to by defendant, were issued in the early twenties. Such exclusive use as plaintiff may be entitled to must be "narrowly restricted to the particular kind of goods" for which plaintiff has used it.

In Prestonettes, Inc., v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 351, 68 L.Ed. 731, Justice Holmes said: "Then what new

rights does the trade-mark confer? It does not confer a right to prohibit the use of the word or words. It is not a copyright. * * * A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141: * * *. When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo. Canal Co. v. Clark, 13 Wall. 311, 327, 20 L.Ed. 581."

The case at bar is not unlike, in reverse, the case of Durable Toy & Novelty Corporation v. J. Chein & Co., 2 Cir., 133 F.2d 853. There, for more than 30 years, the plaintiff had manufactured and sold toy coin banks under three registered trademarks, the most characteristic feature of each being the words "Uncle Sam." These words had been registered 69 times. The defendants, manufacturers of tin ware of various kinds, began to make a rude toy coin bank, upon the top of which was the legend "Uncle Sam Bank." Plaintiff's banks sold at from 59 cents to $2.50, while defendant's sold at 10 cents. The court noted a distinction between buyers of toys for retail dealers, to whom, it might be assumed, the mark had come to indicate that plaintiff made any toy bank which bore it, and the consuming public who, it could not be assumed, because of the cheapness of defendant's bank, would be led to buy one in the belief that plaintiff had made it, or would be influenced at all by the mark. And the court said, per L. Hand, J., 133 F.2d at page 854 (last paragraph, right column): "If the plaintiff is to succeed in putting the defendants to an accounting, it must be, not because they have stolen its customers by masquerading under its name, but because it has acquired some monopoly of the words, 'Uncle Sam,' as such. That would, however, run counter to the whole basis of the law of the subject; for a trade-mark never really gives any property in the words themselves; all it does is so to identify the 'owner' that its use by others can be said to divert to them customers who might otherwise have bought of him."

In Philco Corporation v. Phillips Mfg. Co., 7 Cir., 133 F.2d 663, 673, 148 A.L.R. 125 (top of left column), the court said: "But the established rule of construction, followed for almost forty years, is that Congress intended federal courts to enjoin the use of a similar trade-mark only on goods which competed fairly directly with the plaintiff's goods."

Plaintiff's trade-mark is limited, as appears from the registration statement, to use in connection with "children's and junior misses' dresses, gowns, wraps, coats of all kinds and of all materials, and hats." As was said in Walgreen Drug Stores v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956, 960 (first full paragraph, right column): "The registered trade-mark is limited by its claim, and the applicant is concluded by his statement made a part of his application. The exclusive right to use the mark should be limited to use on the class of goods for which it was registered, as set forth in the statement filed, and to merchandise of substantially the same descriptive properties."

Women's lingerie and dresses do not seem to me to have substantially the same descriptive properties as children's and junior misses' dresses.

Furthermore, Section 85 (Section 5 of the Trade Mark Act) provides "That trademarks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered."

It seems to me fair to conclude that this restriction and the trade-mark issued to Goldston in 1922 for dresses caused Silver to add to the words "Princess Pat" the heraldic emblem or shield in order to obtain registration. The mark, thus registered, does not consist of the words "Princess Pat" alone but of those words in combination with a fanciful or arbitrary device. It is a composite mark. Plaintiff's claim

is that defendant infringes by using the words "Princess Pat" alone and not by using the entire trade-mark. But a composite mark constitutes a symbol. It must be considered as an entirety. It cannot be dissected and infringement claimed of only one of the pieces, James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 128 F.2d 6, 8, where "Millsite Bassor" was held not to infringe "Head-On Bassor," both being applied to artificial fishing bait.

█ If plaintiff has no exclusive right to the words "Princess Pat," it must follow that it has no right to enjoin their use by defendant as part of its corporate name. Plaintiff's claim that defendant adopted these words as part of its name with full knowledge of their prior use by plaintiff and with intent to deceive the public and purchasers of plaintiff's merchandise and to cause the public generally to believe that plaintiff and defendant are one and the same, all of which is categorically denied by defendant's president, is really immaterial, if defendant had a right to use these words. The case at bar is quite different from the case of Rice & Hutchins v. Vera Shoe Co., 2 Cir., 290 F. 124, relied on by plaintiff, for there the plaintiff had the sole right to the use of the trade-mark "Vera" on boots and shoes, and defendant, organized 14 years later to make boots and shoes, was properly enjoined from using the word, either on its goods or in its corporate name.

█ Plaintiff has failed to show that defendant infringes its trade-mark.

Nor has plaintiff offered any real evidence of unfair competition. It has not shown that defendant is palming off its dresses as dresses manufactured by plaintiff, nor has it shown a single instance of actual confusion or deception of purchasers, or any likelihood thereof, or any damage to itself. Neither has it shown that the words "Princess Pat" have come to signify its dresses and its dresses only. The essence of unfair competition is that there is probable danger that the goods of one man can, and are likely to, be passed off as the goods of another. Under such circumstances no injunction should issue. Plaintiff's motion is denied.

Settle order on two days' notice.