ISADOR STRAUS ET AL., TRADING AS R. H. MACY
& CO., v. NOTASEME HOSIERY COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 184.   Argued January 17, 18, 1916.—Decided February 21, 1916.

While one using an unregistered design similar to that adopted earlier
by another may be enjoined from further use thereof, he may not be
charged with profits if it appear that the original imitation was
unintentional, that no deceit or substitution of goods was accom-
plished in fact, and that no considerable part of the business was
due to his goods being supposed to be those of the earlier user of the
design.

One innocently adopting an unregistered design and continuing to use
the same after notice, not for the purpose of stealing the good will of
the earlier user but of preserving his own business, held, in this case,
not to be charged with profits not shown to have been obtained by
sales of articles supposed to be those of the earlier user.

Relief for unfair competition not given, as the supposed unfairness
consisted mainly in the use of a device that the earlier user sought
to have registered but was refused.

215 Fed. Rep. 361, reversed in part.

THE facts, which involve questions of unfair competition
by using an unregistered trade-mark adopted as a business
design for hosiery, are stated in the opinion.

Mr. Edmond E. Wise for petitioner.

Mr. E. Haywood Fairbanks, with whom Mr. James H.
Griffin was on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by the Notaseme Hosiery
Company to restrain infringement of a registered trade-
mark and unfair competition alleged to have been prac-
ticed by the petitioners, and to recover damages and

profits. The plaintiff's trade-mark, as registered, was a rectangle with a black band running from the left hand upper to the right hand lower corner, the upper and lower panels on the two sides of the band being printed in red. As used, it contained the word Notaseme in white script upon the black band, with the words Trade Mark in small letters upon the white, and beneath the label was printed "Reg. U. S. Pat. Office." In fact registration had been refused to the label with the word Notaseme upon it, that word being merely a corrupted description of the seamless hosiery sold. The defendants, among other items of a large retail business in New York, sold hose with seams, which they advertised under the name Irontex. After this name had been adopted, in pursuance of their request designs were submitted to them and one was chosen. It turned out that this was made by the printer who had made the Notaseme label. It also was a rectangle with a diagonal black band and red panels, the band in this case running from the right hand upper corner to the left hand lower, and having the word Irontex in white script upon the band and 'The hose that—wears like iron' printed in black upon the two triangles of red. The defendants never had seen or heard of the plaintiff, its label or its goods until November, 1909, when they were notified by the plaintiff that they were infringing its registered trade-mark. They ultimately stood upon their rights.

At the original hearing in the Circuit Court it was held that the plaintiff had embodied such a misrepresentation in the trade-mark as used that it would not be protected, and that unfair dealing was not made out. This decision was reversed by the Circuit Court of Appeals on the ground that although the evidence did not show actual deception, the label used by the defendants so far resembled the plaintiff's that it would have deception as its natural result and that the plaintiff was entitled to

relief whether the trade-mark on its label was good or bad as such. 201 Fed. Rep. 99. The plaintiff was allowed to recover profits from a reasonable time after the defendants had notice of the similarity of the two designs, which was put at January 1, 1910. 209 Fed. Rep. 495. 215 Fed. Rep. 361. 131 C. C. A. 503.

We agree with the Circuit Court that the plaintiff is not in a position to recover for an infringement of a registered trade-mark. The mark that it used held out to the public as registered in the Patent Office precisely the element that had been rejected there. It affirmed that the authority of the United States had sanctioned that for which that authority had been refused, and by grasping at too much lost all so far as this case is concerned. *Holzapfel's Compositions Co.* v. *Rahtjen's American Composition Co.*, 183 U. S. 1, 8. The liability of the defendant must be derived from unfair competition if it exists.

That it was unfair to continue the use of a label so similar in general character to the plaintiff's we are not disposed to deny. But it does not follow that the defendants are chargeable with profits as a matter of course. Very possibly the statutory rule for wrongful use of a trade-mark may be extended by analogy to unfair competition in a proper case. But as the ground of recovery in the latter instance is that the defendant has taken some undue advantage of the plaintiff's reputation, or that of his goods, and as the nature and extent of the wrong may vary indefinitely, it cannot be assumed in all cases that the defendant's sales were due to that alone.

Ordinarily imitation is enough to imply that the matter imitated is important at least to the sale of the goods. But when the similarity arises as the one before us did, it indicates nothing, except perhaps the poverty of the designer's invention. Furthermore the defendants' persistence in their use of the design after notice proves little or nothing against them. They had been advertising

their goods by name and using the design in connection
with the name. The natural interpretation is not that
they wanted to steal the plaintiff's goodwill of which they
then learned for the first time, but that they wished to
preserve their own. When they stood upon their rights
of course they made themselves responsible for the con-
tinued use of a label that might be held likely to deceive,
and if it should be held manifestly to have that tendency,
they would be chargeable for what in contemplation of
law was an intentional wrong, or a fraud, although the
case is wholly devoid of any indication of an actual in-
tent to deceive, or to steal the reputation of the plaintiff's
goods: If the defendants' conduct was a wrong, as we
have assumed, it was a wrong knowingly committed, but
no further inference against the defendants can be drawn
from the fact.

It seems a strong thing to give relief on the ground of
unfair competition when the supposed unfairness consists
mainly in the imitation of a device that sought, obtained
and lost protection as a trade-mark. If a would-be trade-
mark loses its protection as such, that means that the
public has a right to use it, and it would be strange to
bring the protection back simply by giving it another
name. If the red square with the diagonal black band is
not a trade-mark it would seem to be free to the world.
See *Flagg Manufacturing Co.* v. *Holway,* 178 Massachu-
setts, 83, 91. *Saxlehner* v. *Wagner,* 216 U. S. 375, 380, 381.
We assume that coupled with the script upon the band
there is sufficient pictorial similarity to deceive some
persons, but, unless we go considerably farther, to charge
the defendants with all the profits would be unjust.

The question remains whether the petitioners' sales
probably were induced to any large extent by confusion
in the mind of the public between the petitioners' goods
and the plaintiff's. The goods were different in character,
were called by a different name, were sold mainly in dif-

ferent places and by parties not likely to be mistaken for each other. The petitioners had advertised them as Irontex since April, 1908. Their business was that of retailers in the City of New York where they were widely known. The Notaseme Company's business was wholesale, from Philadelphia, starting with New England and the South. So far as purchasers bought because the petitioners recommended the goods, or on the strength of the name, by whatever recommended, as distinguished from the colors and figures of the label, or from knowledge of the specific article, or from preference for full fashioned over seamless hose, or for any reason but the inducement of the red square, bar and script supposed to indicate the plaintiff's hose, the plaintiff has no claim on the petitioners' profits.

There is some indication that the plaintiff's business was mainly in hosiery for men, while Macy & Co.'s was more than three-quarters for women and children. That the name, which the defendants do not imitate, but on the contrary exclude by using another wholly unlike it, was thought more important by the plaintiff than it now is willing to admit, is shown not only by the use of it upon the trade-mark proper, but by the adoption of a new name for the plaintiff company to conform to it. Taking all these considerations into account, coupled with the absence of evidence that any deceit or substitution was accomplished in fact, we find it impossible to believe that any considerable part of the petitioner's business was due to their goods being supposed to be the plaintiff's hose. The petitioners properly were enjoined from further use of the mark in controversy, but so far as the decree charged them with profits it is reversed.

*Decree reversed.*

MR. JUSTICE MCKENNA and MR. JUSTICE PITNEY dissent.