GORDON'S DRY GIN CO., Limited, v. EDDY & FISHER CO.

(District Court, D. Rhode Island. December 29, 1917.)

1. TRADE-MARKS AND TRADE-NAMES ☞92—BILL—EXHIBITS.

Though a bill charging unlawful imitation of complainant's trade-marks and labels and unfair competition was indefinite, in that complainant's registered trade-mark was not described therein, but merely appeared in exhibits attached to the bill, yet where defendant's answer specifically denied that its trade-marks were an imitation of the labels and trade-marks of complainant, and the case was tried upon evidence as to the registered trade-mark of complainant as well as upon evidence of a general imitation of labels, the case at final hearing may be considered as presenting questions both of infringement of trade-marks and of unfair competition.

2. TRADE-MARKS AND TRADE-NAMES ☞58—UNFAIR COMPETITION—WHAT CONSTITUTES.

Where complainant's registered trade-mark included a boar's head, and complainant's gins had long been before the public, the adoption by defendant of a label also bearing a boar's head amounts to unfair competition, even though there was considerable difference in the drawings, for a trade-mark is a sign which may become known to the public by name as well as by sight, and as complainant's gins might be associated with the representation of a boar's head, the adoption by defendant of a similar device was unfair.

3. TRADE-MARKS AND TRADE-NAMES ☞55—UNFAIR COMPETITION—INTENTIONAL WRONG.

Where, after notice that its label conflicted with the registered trade-mark of complainant, defendant refused to remove the misleading device, defendant is guilty of an intentional wrong, even though in the first instance there was no intention on its part to palm off its goods as those of plaintiff.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Bill by the Gordon's Dry Gin Company, Limited, against the Eddy & Fisher Company. Decree for complainant.

Barney, Lee & McCanna, of Providence, R. I., for plaintiff.
Tillinghast & Lynch, of Providence, R. I., for defendant.

BROWN, District Judge. The bill charges unlawful imitation of plaintiff's trade-marks and labels and unfair competition.

Upon a comparison of the respective labels of plaintiff and defendant there appears a general resemblance, which, on a casual observation, might lead to a confusion of goods. This general resemblance is not destroyed by the points of difference upon which the defendant insists.

At the hearing the plaintiff introduced in evidence, without objection from the defendant certificate of registration No. 21,734 of trade-mark for spirituous liquors and cordials, consisting of the representation of "a boar's head resting on a roll," and also certificate of registration No. 68,640 of trade-mark for gin, showing in the drawing a complete label having a similar boar's head as a central feature.

[1] While the bill is somewhat indefinite, in that the "boar's head" as a registered trade-mark is not therein described, but merely appears in exhibits attached to the bill, yet as the defendant's answer specifically denies that its labels and trade-marks are in imitation of the labels and trade-marks of the plaintiff, and as the case was tried upon evidence as to the registered trade-mark of a "boar's head," as well as upon evidence of a general imitation of labels including with a boar's head other features, the case made at final hearing properly may be considered as presenting questions both of infringement of trade-mark and of unfair competition.

[2] The defendant uses upon its labels the representation of a boar's head. Upon comparison there is considerable difference in the drawings, and it is probable that one familiar with the plaintiff's drawing would at once perceive the difference. This, however, is not a sufficient justification for the use of a boar's head by the defendant. The defendant's trade-mark answers the general description of plaintiff's in that it is a boar's head.

A trade-mark is a sign which may become known to the public by name as well as by sight. Thus "The Bull Dog Bottling," with a bull-dog's head, became known as "Dog's Head" beer; and its proprietors were granted an injunction against the use of a "rough terrier's head." Read v. Richardson, 45 Law T. (N. S.) 54.

The actual physical resemblance of the two marks is not the sole question for the court; for if the plaintiff's goods have, from his trade-mark, become known in the market by a particular name, the adoption by the defendant of a mark or name which will cause his goods to bear the same name in the market is as much a violation of the plaintiff's rights as an actual copy of his mark. Seixo v. Provezende, L. R. 1 Ch. 192; De Voe Snuff Co. v. Wolff, 206 Fed. 720, 124 C. C. A. 302.

Though the plaintiff offered no evidence to show that its gin was called by the name "Boar's Head," and no evidence of actual deception of customers, it offered evidence that the gin had been sold in large quantities for many years (since 1769) associated with the representation

of a boar's head, and had been extensively advertised at a large expense.

Where a trade-mark consists of printed words, it may be infringed by the same words in different form, type, or writing; and it would seem also to follow that the oral use of the same words as descriptive of goods other than those of the proprietor of the original trade-mark might constitute infringement. The written word and the spoken word have the same meaning, and as goods are bought and sold by oral as well as by written description, pictorial trade-marks which are sufficiently alike to have the same name are likely to lead to confusion in oral description of goods. Thus one who tries and likes beer with a bulldog trade-mark may remember it as "Dog's Head," and extol its qualities under that name to one who calls for "Dog's Head" and is satisfied when given a bottle with a dog's head, though it be a rough terrier's head. See Read v. Richardson, 45 Law T. (N. S.) 54.

[3] Upon comparison of the labels considered as a whole I am of the opinion that the plaintiff has established such imitation as might prove deceptive. I am not satisfied, however, that the defendant is guilty of a fraudulent intention of palming his goods off as the goods of the plaintiff, or that actual deception has resulted. The correspondence shows that the defendant, after notice, though denying imitation, was willing to concede the plaintiff's view and to eliminate the boar's head. He afterwards concluded to stand upon his rights. As was said in Straus v. Notaseme Co., 240 U. S. 179, 182, 36 Sup. Ct. 288, 289 (60 L. Ed. 590):

"When they stood upon their rights of course they made themselves responsible for the continued use of a label that might be held likely to deceive, and if it should be held manifestly to have that tendency, they would be chargeable for what in * * * law was an intentional wrong, or a fraud, although the case is actually devoid of any indication of an actual intent to deceive, or to steal the reputation of the plaintiff's goods."

While I am not satisfied that the plaintiff has made out a case entitling it to an account of profits (see Straus v. Notaseme Co., 240 U. S. 179, 183, 36 Sup. Ct. 288, 60 L. Ed. 590), that question may be further heard upon the settlement of a decree.

I am of the opinion that the plaintiff is entitled to an injunction restraining the defendant's use of a boar's head as a trade-mark for gin, and also the use of its present labels.

A draft decree may be presented accordingly.