MAATSCHAPPIJ TOT EXPLOITATIE VAN RADEMAKER'S KONINKLIJKE CACAO & CHOCOLADEFADRIEKEN v. KOSLOFF et al.

No. 316.

Circuit Court of Appeals, Second Circuit.

Aug. 7, 1930.

On Rehearing Dec. 10, 1930.

Mock & Blum, of New York City (Asher Blum, of New York City, of counsel), for appellant.

William Wallace White, of New York City (Archibald Cox, of New York City, of counsel), for appellees.

Before L. HAND, CHASE, and MACK, Circuit Judges.

MACK, Circuit Judge.

We adopt in substance statement of facts made by the learned District Judge as follows:

"Plaintiff, a Dutch corporation, brought this suit against defendants, who are selling agents in this country of another Dutch concern which manufactures in Holland a confection known as 'Frank Rademaker's Hopjes,' in competition with a similar product made by plaintiff under the name of 'Rademaker's Hopjes.'

"The complaint sets up two causes of action; one, based upon an alleged infringement of a trade-mark registration of 'Rademaker's Hopjes' with specified markings, and the other upon the ground of unfair competition. * * *

"On the fourteenth day of November, 1782, the city of Brussels was occupied by French troops, and Hendrik Baron Hop, the Dutch Ambassador, was ordered to the Hague, where he took quarters in the home of a confectioner and pastry baker by the name of Theodorus Van Haaren. According to tradition, the latter, in an effort to please his distinguished guest, manufactured a hard candy, cut into squares or cubes, made from coffee, sugar and fresh cream. The confection so met the fancy of the Ambassador that he purchased it in considerable quantities for distribution among his friends. So generously and generally did he perform that considerate function that the confection was associated with the name of the Ambassador, and came to be known as 'Hopjes' which signified 'little Hops.'

"Van Haaren had a daughter who, in 1802, married Pieter Nieuwerkerk, and when the originator of the confection was gathered unto his fathers, the business he had established was continued by his son-in-law. In the century and more that has passed, the Nieuwerkerk family has carried on the manufacture of hopjes, and its product is now on sale in this city (New York). Meanwhile, other manufacturers, attracted by the business, engaged in making hopjes and sold the candy over the counters of their shops.

"As the years went on, a Hollander named Johannes Petrus Rademaker took up the business of a confectioner. His elder son, Franciscus Joseph Maria Rademaker (herein known as Frank Rademaker), became a manager for his father at Scheveningen, Holland. A few years later, a younger son, William Joseph Rademaker, who is now the managing director of the plaintiff, became associated in the business and over the period from 1894 to 1899 he acted as superintendent of his father's factory at Cologne, Germany. Notwithstanding, this portion of the father's business was never transferred to the plaintiff, but remained the property of the founder of the house.

"In 1896, or thereabouts, the Rademaker concern began to make hopjes on a small scale, and in increasing measure have continued to do so. Three years later the business of Johannes Petrus Rademaker, at Scheveningen, was transferred to the plaintiff, and the two sons, Frank and William, became its co-managers. Shortly thereafter, Frank went to England, where he formed and afterwards liquidated a chocolate business. When he had done so, probably about 1904, he failed to reassociate himself with his brother, but established and conducted his own business at Rotterdam, in which he made and sold hopjes. * * *

"On January 8, 1910, plaintiff filed applications for and was granted registration of certain trademarks under 'the ten year clause' of the registration statute. The marks are described as follows:

"No. 82,808 'Rademaker's Hopjes'

"No. 89,860, the display of 'S. Rademaker Hopjes' in light letters (either yellow or white) against a comparatively dark (either black or gold) disk on the labels with which each piece of plaintiff's products is wrapped.

"No. 85,756, the registration of a label reading 'Haagsche Hopjes' on which the mark described in No. 89,860 is displayed. * * *

"About eight or nine years ago, Frank Rademaker began to make shipments of hopjes of his manufacture to the United States. In the year 1923, they came to the attention of the defendants who were engaged in the fruit and candy business, and who had previously handled a negligible quantity of another brand of the candy. In 1924, the Kosloff firm acquired the American agency for Frank Rademaker's goods. It began to push the business among the smaller candy stores and distributing centers of New York City, while the plaintiff's product was handled by

the more exclusive stores. Plaintiff's distributors began to feel the effects of competition as early as 1923, and in that year, plaintiff's agents filed the above mentioned registration with the custom's authorities, and under the provisions of section 526 of the Act of September 21, 1922 (19 USCA §§ 141–143) succeeded in stopping temporarily an importation of about 4,000 pounds of Frank Rademaker's hopjes. The shipment was finally released, and the goods were distributed. In 1925, Frank Rademaker petitioned for the cancellation of plaintiff's American trademark registration, and the examiner sustained the petition."

"Plaintiff, over the years from 1911 to 1927 has built up an American consumption running from 5,000 pounds in 1911 to 175,000 pounds in 1927. At the present time, defendants are handling about 40,000 pounds of the Frank Rademaker brand, per annum. In this regard, it may also be remarked that in 1921 or 1922, when plaintiff says it began to feel the competition offered by defendants, its American business in the confection was about 40,000 pounds. In the years since Frank Rademaker's goods came on the market, plaintiff's sales have increased more than four times over, while that of defendants in the same period increased from a negligible quantity of 40,000 pounds per annum."

■ After successive appeals, the United States Court of Customs and Patent Appeals, since the submission of the case before us, has reversed the lower tribunals and has held the trade-marks good under the ten-year provision of the Trade-Mark Act of Feb. 20, 1905 (15 USCA § 85), as having been used on "Hopjes" candy during the ten years immediately preceding February 20, 1905. This decision necessarily involves a finding by that court, that appellant's predecessor had sold the goods under the mark "Rademaker's Hopjes" since prior to 1895. While, in view of the conclusion reached by us as to unfair competition, it may not be absolutely essential to determine the question of trade-mark, on the conflicting evidence before us, and in the light of that decision, we concur in the conclusions therein reached. Irrespective, however, of the validity of the trade-mark, we concur in the holding of the trial judge that, even if the claim, asserted by the registration, of a ten-year use of the mark prior to 1905, means such use in this country and if such claim were false, so that plaintiff would be unable to assert rights under the trademark, it would not thereby be prevented from obtaining relief against unfair competition in the sale of its goods; wrongdoing directly connected with the right sought to be vindicated may on the doctrine of "unclean hands" deprive one of a remedy against piratical attacks on that property right; it does not outlaw the wrongdoer and leave him without protection in the vindication of other, though closely connected, rights. Straus v. Notaseme Co., 240 U. S. 179, 36 S. Ct. 288, 60 L. Ed. 590.

Clearly plaintiff had and has no exclusive right to the Dutch word "Hopjes." It has not used that word alone, to indicate the origin of a species of candy; it has always coupled it with "Rademaker." We need not, therefore, determine whether or not one who first introduces into this country a foreign product under its foreign name, well known abroad and to some extent in the United States, may by user acquire any exclusive rights therein. Plaintiff itself, from the beginning, used the word, as it had been used in Holland, not to designate its product, but to describe a well-known product which it, among others, made; "Hopjes" alone never, in fact, acquired a secondary meaning as designating plaintiff's candy. Whether the average purchaser knows or cares whether he gets plaintiff's or defendants' goods is not material; if, as we hold, "Rademaker's Hopjes" has come to mean hopjes not made by any one of that name or of the same family, but by the one who originally in this country established the trade therein, or his successor, it is in the public as well as in plaintiff's interest that others of the name fairly differentiate their product.

On this record, in view of its continuous and comparatively large sales prior to the beginning of defendants' importations, plaintiff has established its right in the secondary meaning of "Rademaker's Hopjes" as meaning its hopjes, and is entitled to protection of the good will resulting therefrom.

Frank Rademaker, on the other hand, has the right to the use of his own name in connection with the sale of his products; defendants, as his agents and/or dealers, may assert the same rights. In substance, therefore, we have the common problem of a right in two persons to use the family name and the duty of the second so to exercise his right as not unfairly to compete with the first. Because of the secondary meaning, Frank Rademaker cannot call his hopjes merely "Rademaker's Hopjes"; he can, however, call them "Frank Rademaker's Hopjes," provided that in so doing he makes it clear that they are his own and not plaintiff's product. Except as to the labels on the paper packages, enjoined by the decree and not now in question

because defendant has not appealed, the District Judge deemed the color and marking distinctions of the wrappers on the individual pieces of candy and the labels on the boxes sufficient to avoid unfair competition.

Over 95 per cent. of plaintiff's and nearly all of defendants' goods are sold in bulk and not in packages. The marking of the individual wrappers present the important problem in this case. These are as follows:

■ The following is a specimen of the wrapper always used by the plaintiff:

The following is a specimen of the wrapper around each hopje sold by the defendants:

In our judgment the use of a red instead of a black shield, with other small distinctions, fails to prevent confusion and unfair competition, in view of the name "Hopjes" in yellow on both and the name "Frank Rade-

maker" in black on yellow as against "S. Rademaker" in yellow on black. This liability to confusion is but emphasized by adding "None Genuine without This Signature." To plaintiff's "None Genuine without This Registered Trade Mark" defendants have added "and Signature." Literally interpreted, defendants' "None Genuine" may well mean that no other hopjes are the Frank Rademaker's product; to the average purchaser, however, they are much more likely to indicate, in our judgment, that Frank's are the only genuine and therefore the original and more or less well-known Rademaker hopjes.

Improper confusion may be avoided, following the color scheme of the shield and its appendages, by a change of the signature from black on yellow to white on red with a corresponding change in the words of the notice thereof, by substituting "This Trade Mark Is Registered" for "None Genuine without This Registered Trade Mark and Signature" and substituting "Formerly Connected with the Original Rademaker" for "None Genuine without This Signature."

■ The labels on the tins are not as likely to create confusion. These are as follows:

The following is a specimen of the label used by plaintiff:

The following is a specimen of the label used by defendants:

But, for the reasons heretofore stated, fair competition requires defendants to omit the phrase "Sole Genuine."

· The decree will be reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed. The District Court may, however, suspend the enforcement of such decree for such time as it may deem reasonable to enable defendants and their vendors to effectuate the necessary changes in the labels and wrappers.

CHASE, Circuit Judge, dissents without opinion.

### On Rehearing.

· PER CURIAM.

Appellant has petitioned the court that the mandate to be issued shall specifically direct the District Court generally to enjoin the use of the name "Frank Rademaker" without the use of the warning phrase, "formerly connected with the original Rademaker," in immediate juxtaposition.

While in the opinion heretofore filed reference was made to the signature "Frank Rademaker," the court did not intend to distinguish between signature and name, but did intend that, if defendant desires to continue to use his name on the labels or wrappers, the indicated phrase should be in immediate juxtaposition thereto.

If, as defendant asserts, this is a physical impossibility in the wrapper around the individual hopjes, it follows that the intention of the opinion was that defendant must then cease to use the name "Rademaker."

The mandate, will, as prayed, enjoin the use of the name instead of the signature, without the use of the phrase specified in immediate juxtaposition.