**FANCEE FREE MFG. CO., Plaintiff,**
v.
**FANCY FREE FASHIONS, Inc.,**
**Defendant.**
United States District Court
S. D. New York.
Feb. 4, 1957.

Harry Price, New York City, for plaintiff.

Emanuel R. Posnack, New York City, for defendant.

DAWSON, District Judge.

This is an action seeking an injunction, accounting and counsel fees, for alleged infringement by the defendant of the trade name and trade-mark of the plaintiff. Jurisdiction arises because of diversity of citizenship and also is claimed under § 39 of The Lanham Act. 15 U.S.C.A. § 1121.

The Court finds the following facts:

1. The plaintiff is a Missouri corporation organized and doing business under the name of "Fancee Free Mfg. Co." It uses the trade name "Fancee Free" on items of merchandise manufactured and sold by it. Plaintiff corporation succeeded to the business of Miss Herma Wiedle, who started the business as a sole proprietorship under the trade name "Fancee Free Mfg. Co." The business was started by Miss Wiedle under that name in 1947; she adopted the corporate form in August 1950.

2. The plaintiff manufactures and sells articles of intimate apparel designed for women, including garter belts, brassieres, girdles, sanitary napkin attachments, slips, petticoats, pajamas, panties and foundation garments. Although plaintiff's business in its earlier days was designed to provide articles primarily intended for maternity wear, it soon developed beyond that field and the articles manufactured and sold by it today are not limited to maternity wear.

3. On December 19, 1947, the plaintiff applied for a United States trademark registration of "Fancee Free" and on November 13, 1954 plaintiff was issued United States Trade-Mark Registration No. 550616 on "Fancee Free" which specifically related to: "garter belts, convertible garter belts and sanitary napkin attachments for garter belts sold as units, brassieres and girdles."

4. The defendant is a New York corporation organized in March 1955 by

certain individuals who previously had been engaged in the underwear trade. It has a factory and also a salesroom in New York City. Defendant corporation, ever since its organization, has used the words "Fancy Free" as its trade-mark on items of merchandise manufactured and sold by it.

5. Defendant manufactures and sells lounging wear, such as brunch coats, dusters, housecoats, two-piece lounge suits, slacks, culottes and cover-alls. It does not manufacture or sell underwear or maternity garments, or such items as garter belts, brassieres, girdles, slips, petticoats, pajamas, panties or foundation garments.

6. The sales of both the plaintiff and defendant are principally to retail stores throughout the country. In many cases sales are made by both parties to the same stores. A substantial part of the sales of each party is made through central buying offices which purchase for affiliated groups as well as individual stores across the nation.

7. Both plaintiff and defendant have advertised their merchandise and in connection therewith have advertised their respective trade-marks. Defendant spent $40,000 in advertising in the one and one-half years it has been in business, of which $23,900 was spent in 1956. Plaintiff spent approximately $8,-500 for advertising in the fiscal year ending August 1956.

8. The gross business done by the defendant in 1956 was $1,650,382. The gross business done by the plaintiff for the fiscal year ending August 1956 was $225,000.

9. There was no evidence that any customer had actually bought any product of the defendant in the mistaken belief that it was a product made by or distributed by the plaintiff. However, as Judge Clark has pointed out: " * * * the test is the *likelihood* of confusion, not the number of specific instances of customer mistake which can be piled up." Hyde Park Clothes, Inc.,

v. Hyde Park Fashions, Inc., 2 Cir., 204 F.2d 223, 229 (dissenting opinion), certiorari denied 1953, 346 U.S. 827, 74 S. Ct. 46, 98 L.Ed. 351. There was ample proof of considerable confusion in the trade resulting from the similarity of the trade names. This evidence established that:

(a) Garments sent by the defendant to stores in Scranton, Pennsylvania, Lafayette, Indiana, Washington, D. C. and Albany, New York, were returned by these stores, in error, to the plaintiff in St. Louis, and charges therefor were deducted from payments due the plaintiff for other merchandise which had been shipped by plaintiff to the respective stores.

(b) The plaintiff received orders from stores in Marion, Ohio and Denver, Colorado, for items of merchandise manufactured by the defendant and not manufactured by the plaintiff.

(c) The plaintiff received complaints from customers for not shipping orders to them where plaintiff had never received such orders because the orders had apparently been sent to the defendant corporation in New York.

(d) The defendant corporation received checks from various stores for merchandise which had not been shipped by the defendant but had been shipped by the plaintiff; defendant cashed these checks, resulting in the necessity for considerable correspondence by plaintiff with the stores to secure payment to the plaintiff for merchandise which it had shipped to the stores.

(e) The plaintiff lost at least one account because the buyer of the particular store in Baltimore refused to do business with a company where there would be confusion in names or where the store might be doing business with two companies having names which sounded the same.

(f) The likelihood of confusion by customers was shown by defendant's advertisements. A woman buying a slip trade-marked "Fancee Free" might well

assume that a lounging robe bearing a similar name came from the same source.

10. Within three months after the defendant started in business, plaintiff protested against its doing business in this field with a name that sounded similar to that of plaintiff and asked defendant to desist from the use of that name. The defendant refused to desist and continues to use its name and advertise that name until the present time.

## Discussion

The defendant contends that the plaintiff is not entitled to the relief sought, primarily on the ground that the respective merchandise sold by the companies falls in unrelated fields. The defendant urges that its merchandise is "outerwear" while the merchandise sold by plaintiff is "underwear" and that the categories are so dissimilar that confusion would not exist. The defendant has also asserted by an affirmative defense that the plaintiff's alleged trade name and trade-mark "Fancee Free" is a descriptive term which is not susceptible of exclusive use when applied to plaintiff's goods; and that the words "fancy free" have been used by other manufacturers so that the word no longer is available as the exclusive property of any manufacturer or distributor.

One essential reason for protecting a trade name or trade-mark is to prevent confusion. The right to a trade-mark is a limited one in the sense that others may use the same name on unrelated goods. Nims, Unfair Competition and Trade-Marks, 667 (4th ed. 1947); American Steel Foundries v. Robertson, 1926, 269 U.S. 372, 381, 46 S.Ct. 160, 70 L.Ed. 317. The issue as to whether the goods sold by the plaintiff and the goods sold by the defendant are related goods is an issue of fact. The evidence shows that articles of intimate wearing apparel as sold by the plaintiff are frequently sold in the same departments of stores which sell items of lounge wear as sold by the defendant.

In some instances the same buyer for a department store will buy both underwear and lounge wear. Certainly it requires little knowledge of merchandising practice to understand that a woman purchaser or wholesale buyer who had bought "Fancee Free" slips or pajamas, might well conclude that a lounge robe or brunch coat bearing a similar trademark might come from a similar source. Though not in competition with each other, these items of feminine apparel are sufficiently related for there to be such a likelihood of confusion as to entitle plaintiff to protection of its trademark. The Lanham Act's standard of infringement, not being limited to competing goods, applies to:

"* * * the sale * * * of *any* goods * * * likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods * * *." 15 U.S. C.A. § 1114(1) (a). (Emphasis supplied.)

Recognizing that a trade-mark is tied to the nature of the goods specified in the registration, the Court concludes that defendant's goods are so related to plaintiff's as to be within the scope of the trade-mark. See Pure Foods, Inc., v. Minute Maid Corp., 5 Cir., 214 F.2d 792, certiorari denied 1954, 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 697; cf. Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, 974.

In addition to a Lanham Act claim, plaintiff's complaint also asserts a claim of unfair competition. Both parties have proceeded on the assumption that New York law is controlling on this issue, and have not urged that a different result would proceed from the application of federal common law. Codification of New York law has found expression in a statute which first became effective on September 1, 1954. It provides:

"Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be a ground for

injunctive relief in cases of trade-mark infringement or unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." Gen. Bus.Law, McK.Consol.Laws, c. 20, § 368–c, subd. 3.

See Peerless Electric Co. v. Peerless Electric, Sup.Ct.1954, 206 Misc. 965, 135 N.Y.S.2d 885.

■ Thus in order to get an injunction for infringement of a trade name or trade-mark, plaintiff need not prove that he is in competition with the defendant, or that there is confusion as to the source of goods. His cause of action for an injunction is established if he shows that the actions of the defendant have resulted in a dilution of the distinctive quality of the trade-mark or trade name. This dilution can be established by showing confusion in the trade; and the confusion is not necessarily limited to a confusion existing among customers.

■ A trade name may acquire a secondary meaning as establishing in the minds of customers the source of goods; a trade name may also acquire a secondary meaning as signifying to a buyer a source of goods which is prompt, reliable and accurate in filling orders and rendering bills. For another company to come into the field bearing the same name, with the result that buyers' orders are not promptly filled, that returns are directed to another company and that confusion results in billing, certainly would result in a dilution of the distinctive quality which that trade name had acquired.

■ Within three months after defendant started in business defendant was advised that plaintiff, an established firm using the name "Fancee Free" as its trade-mark and trade name, was selling goods in the related field of intimate feminine wearing apparel and that confusion would result if defendant continued to use the name which it had adopted. Nevertheless, defendant elect-

ed to continue the use of 'that name. Thereafter confusion did develop. It would seem that proper respect for the rights of others would have occasioned some action by the defendant to avoid using a name which was already in use in a related field. The defendant urges in its defense that the plaintiff has not established that its name has acquired a secondary meaning. But this no longer is the test. The test is whether the acts of the defendant are fair or unfair according to the principles recognized in equity, and not according to the "morals of the market." Oneida, Ltd. v. National Silver Co., Sup.Ct.1940, 25 N.Y.S.2d 271, 276. See Flint v. Oleet Jewelry Mfg. Co., D.C.S.D.N.Y.1955, 133 F.Supp. 459.

■ Modern advertising and merchandising methods have proved the validity of Shakespeare's statement that "A good name is rather to be chosen than great riches." A good name may, in fact, lead to great riches in the marts of trade. The president of defendant testified that the trade-mark "Fancy Free" was worth more than $3,000 to his firm. A due appreciation for the rights of others might have brought him to the conclusion, on reflection, that the trade-mark was also of considerable value to the plaintiff. And, as the first user of the mark, the plaintiff would have been entitled to such value as it may possess and to prevent dilution of that value by another. Cf. McLean v. Fleming, 1877, 96 U.S. 245, 24 L.Ed. 828.

■ Nor does the fact that plaintiff spells the word "fancee" while the defendant spells it "fancy" deprive the plaintiff of a right to recovery. See McLean v. Fleming, supra (McLane infringes McLean); Stephano Bros., Inc., v. Stamatopoulos, 2 Cir., 1916, 238 F. 89, L.R.A.1917C, 1157 (Radames infringes Rameses); 1 Nims, Unfair Competition and Trade-Marks, § 221(i) (4th ed. 1947).

■ Defendant's affirmative defense that the words "Fancee Free" constitute a descriptive term which is not suscepti-

ble to exclusive appropriation as a trademark is hardly worthy of discussion. The words "Fancee Free" were duly registered as a trade-mark by the Patent Office which obviously did not think that they were a descriptive term. *Compare* 15 U.S.C.A. § 1052(e) *with* 15 U.S.C.A. § 1052(f). Furthermore the words are in no sense descriptive of the merchandise but rather are of that fanciful type that customarily are appropriated and used as trade-marks. See Douglas Laboratories Corp. v. Copper Tan, Inc., 2 Cir., 210 F.2d 453, certiorari denied 1954, 347 U.S. 968, 74 S.Ct. 779, 98 L. Ed. 1109.

The defendant's argument that the trade-mark is descriptive is based upon his assertion that it is a term "designating free movement." If this is so it would seem that the term is hardly descriptive but rather the very antithesis of the purpose for which I would suppose girdles and brassieres are made and sold. Defendant's counterclaim seeking cancellation of the plaintiff's registered trade-mark on the ground that the registered trade-mark is merely descriptive should be dismissed.

 The principle recognized in equity is that one should not use another's name for business purposes if as a result confusion will develop. Albro Metal Products Corp. v. Alper, 1st Dept. 1952, 281 App.Div. 68, 117 N.Y.S.2d 342. Cogent authority exists, however, in support of the proposition that federal common law is the measure of plaintiff's unfair competition claim. See Maternally Yours, Inc., v. Your Maternity Shop, 2 Cir., 1956, 234 F.2d 538 (dissenting opinion). But under that standard as well, plaintiff's right to recover has been established, as proof of confusion, even without showing competition, is sufficient. See S. C. Johnson & Son, Inc., v. Johnson, 2 Cir., 175 F.2d 176, certiorari denied 1949, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527; Developments in the Law —Trade-Marks and Unfair Competition, 68 Harv.L.Rev. 813, 844 (1955).

 Plaintiff seeks not only an injunction but also an accounting for damages "as well as profits defendant has improperly made as a result of its unfair competition and trade-mark and trade name infringement." The parties stipulated that the determination as to damages and profits would be referred to a Master. There was proof presented to the Court of damages suffered by plaintiff, such as the cost of circularizing the trade to advise them of the existence of two companies having similar names, and the loss of money due to payments being made to defendant, and discounts taken thereon, for goods shipped by the plaintiff, etc. There was no proof presented to the Court of any profits made by the defendant as a result of the use of the trade-mark or trade name. There was no proof that defendant used its trade name or trade-mark to deceive customers into buying merchandise in the belief that such merchandise was manufactured by the plaintiff. Nor was there any proof that any substantial part of defendant's profits was a result of goods being purchased in such mistaken belief. Under such circumstances the issuance of an injunction and decree for actual damages sustained might be proper but it would be improper to allow plaintiff to recover the profits of defendant. Straus v. Notaseme Hosiery Co., 1916, 240 U.S. 179, 36 S.Ct. 288, 60 L. Ed. 590. Profits are not allowed as a right but only "subject to the principles of equity." 15 U.S.C.A. § 1117. See Triangle Publications v. Rohrlich, 2 Cir., 1948, 167 F.2d 969. Similarly, the absence of fraud here precludes allowance of counsel fees to plaintiff. See Maternally Yours, Inc., v. Your Maternity Shop, supra.

## Conclusion

The Court concludes:

(1) That plaintiff has a valid trade-mark and trade name "Fancee Free" and that this trade-mark and trade name has acquired secondary significance as indicating articles of feminine apparel manufactured and sold by plaintiff.

(2) That use by defendant of the trade-mark and trade name "Fancy Free" in connection with the sales of articles of feminine apparel has caused confusion in the trade and is likely to result in confusion to purchasers of articles of feminine apparel; and by dilution of the value of the trade name and trade-mark of plaintiff that this use constitutes an infringement of the trade name and trade-mark of plaintiff.

(3) That the use by the defendant of the trade-mark and trade name "Fancy Free" has resulted in damages to plaintiff and that plaintiff has no adequate remedy at law.

(4) That defendant did not adopt the trade name and trade-mark "Fancy Free" with any intent to trade on the good will of plaintiff or to deceive purchasers into purchasing its merchandise in the mistaken belief that it was the merchandise of the plaintiff; nor is there any proof that any appreciable amount of any merchandise sold by the defendant was bought by customers in that mistaken belief, or that the profits of defendant resulted from sales of merchandise fraudulently sold on the representation that the articles were provided by the plaintiff or in the belief by the customers that the articles were articles manufactured by the plaintiff.

(5) That an injunction should be issued permanently restraining the defendant from using the trade name "Fancy Free" or the trade-mark "Fancy Free" in connection with the sale or distribution of articles of feminine apparel.

(6) That judgment should be entered for plaintiff for damages and costs, and that the decree to be entered should provide for the appointment of a Master to take evidence upon and to report with respect to the amount of such damages and costs.

This opinion shall constitute the findings of fact and conclusions of law of the Court.

Submit proposed interlocutory decree in conformity herewith within fifteen days from the date of this opinion.