**KOZAK AUTO DRYWASH, INC., Plaintiff,**

v.

**ENVIRO–TECH INTERNATIONAL, INC., Dri–Kleen, Inc., Kurt E. Ziemendorf and Ziemo Marketing & Dist., Defendants.**

No. 93–CV–0230E(F).

United States District Court, W.D. New York.

June 9, 1993.

**122**

Peter K. Sommer, Buffalo, NY, for plaintiff.

Ralph L. Halpern, Buffalo, NY, for defendants.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

The plaintiff, a manufacturer of "DRY WASH," chemically-treated cloths for cleaning lacquered and enamelled finishes, commenced this suit claiming that the defendants' use of the trademark "DRI WASH'n GUARD" for a chemical solution used for a cleaning preparation, polish and protective coating for automotive vehicles, metal surfaces, fiberglass and glass constitutes (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, (2) common-law trademark infringement, (3) false designation of origin and false representation in violation of 15 U.S.C. § 1125(a), (4) dilution of the distinctive quality of the plaintiff's mark under section 368–d of New York's General Business Law and (5) unfair competition under New York's common law. Presently before this Court is the plaintiff's motion for a preliminary injunction enjoining the defendants from using "DRI WASH'n GUARD" as a trademark for their products and, in the alternative, for partial summary judgment on the issue of liability. The motion will be denied for the reasons set forth below.

■ To obtain a preliminary injunction the moving party must show (1) irreparable injury and (2) either (a) a likelihood of success on the merits or (b) serious questions going to the merits so as to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir.1988). A showing of a likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm, assuming that a particular mark warrants protection under the Lanham Act. *Ibid.* The plaintiff contends that it is entitled to a preliminary injunction because it has successfully demonstrated the likelihood of confusion and, thus, the likelihood of success on the merits. It is its contention that the products are non-competing, and, in such case, the likelihood of confusion is evaluated by balancing the factors articulated by Judge Friendly in *Polaroid Corporation v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961)—*viz.*, (1) the strength of the prior owner's mark, (2) the similarity between the two marks, (3) the proximity of the products, (4) the likelihood that the prior user will bridge the gap, (5) actual confusion, (6) the defendant's good faith in adopting its mark,

(7) the quality of the defendant's product and (8) the sophistication of the buyers. *Western Pub. Co., Inc. v. Rose Art Industries, Inc.,* 910 F.2d 57, 60–61 (2d Cir.1990). Needless to say, a summary judgment of infringement will not be granted absent a showing of likelihood of confusion.

■■■ The strength of a mark—the first *Polaroid* factor—is measured by "the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular source." *McGregor–Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979). Such is a crucial factor in the likelihood-of-confusion analysis, for it indicates the degree of association between a plaintiff and the trademark, which creates the probability that consumers will wrongly assume that such plaintiff is somehow associated with a defendant's product. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 873 (2d Cir. 1986). The stronger the mark, the broader the protection to which it is entitled. *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 258 (2d Cir.1987). Typically, this determination is made by considering both the mark's conceptual strength and its commercial strength. *Brown v. Quiniou,* 744 F.Supp. 463, 468 (S.D.N.Y.1990). The conceptual strength of a mark can be weighed by categorizing the mark as either generic, descriptive, suggestive or arbitrary/fanciful— generic being the weakest and arbitrary/fanciful being the strongest. *See McGregor– Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d at 1131. Here, both parties agree that, because the Patent and Trademark Office registered the plaintiff's mark without requiring proof of secondary meaning, the mark is entitled to a rebuttable presumption that it is more than merely descriptive. *See Papercutter, Inc. v. Fay's Drug Co., Inc.,* 900 F.2d 558, 563 (2d Cir.1990). Yet, a mark's category is not alone controlling in determining its strength. *Centaur Communications v. A/S/M Communications,* 830 F.2d 1217, 1225 (2d Cir.1987). Although the plaintiff's mark's presumed status as a more-than-descriptive mark indicates that it is protectable, it bespeaks little about the relative strength of the mark beyond its raw protectability. With respect to the commercial strength of the mark, the plaintiff states that the mark "has been used continuously and substantially exclusively by plaintiff or its predecessor-in-interest for some sixty-six years on a nationwide basis," Memorandum in Support of Kozak's Motion for a Preliminary Injunction, filed March 18, 1993, at 9, but fails to offer competent support for such contention. Instead, the plaintiff asserts that it is not required to prove the commercial strength of the mark because the mark is "commercially incontestable" as a result of its filing of a section 15 affidavit. Reply Memorandum in Support of Kozak's Motion for a Preliminary Injunction, filed April 1, 1993, at 7; *see* 15 U.S.C. § 1065. However, while the incontestable status of the registration creates a conclusive presumption as to the validity of the mark, such incontestability does not prevent the defendants from questioning the strength of the mark and the scope of its protection. *Cullman Ventures, Inc. v. Columbian Art Works, Inc.,* 717 F.Supp. 96, 121 (S.D.N.Y.1989); *see also Oreck Corp. v. U.S. Floor Systems, Inc.,* 803 F.2d 166, 171 (5th Cir.1986) ("Incontestable status does not make a weak mark strong."). The plaintiff has accomplished little towards demonstrating that its mark deserves a broad measure of protection.

■■■ The next factor—the similarity of the marks—is considered in order to determine whether any such is likely to cause confusion among prospective purchasers. *McGregor–Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d at 1133. In evaluating this factor, courts are to focus on the general impression conveyed to the purchasing public by the respective marks, taking into consideration all the factors that could reasonably be expected to be perceived and remembered by potential purchasers. *Ibid.* Here, the plaintiff contends that the similarity has been established because the dominant part of the defendants' "DRI WASH" is phonetically equivalent to the plaintiff's "DRY WASH." However, phonetic similarity is merely one of numerous elements to be considered, and an examination of the respective marks—based on the parties' affirmations and exhibits thereof—discloses dissimilarities, undermining the plaintiff's contention. For instance, while the plaintiff's mark utilizes a red and

yellow design—*see* Exhibit C to Supplement Affidavit of Peter K. Sommer, Esq. (sworn to March 19, 1993)—, the defendants' mark uses a white, teal blue and red color scheme—Declaration of Rodney Yanke (dated March 27, 1993). Further, the plaintiff's product identification on the package reads, in its most conspicuous part, "AUTO DRY-WASH," rendering the mark less confusing with the defendants' "DRI WASH'n GUARD." Exhibit C to Sommer Supplemental Affidavit. Moreover, in contrast to the plaintiff's mark, which is printed horizontally to be read from left to right—*see ibid.*—, the words "DRI WASH" in the defendants' mark are often printed vertically to be read from top to bottom—*see, e.g.,* Exhibit A to Sommer Supplemental Affidavit. Furthermore, the plaintiff's mark is placed on plastic bags containing the polish cloths, whereas the defendants' mark is imprinted on plastic bottles containing liquid solution. Yanke Declaration, at 11.

■ Analysis of the next factor—the proximity of the products—evaluates whether the two products compete with each other. *Lang v. Retirement Living Pub. Co., Inc.,* 949 F.2d 576, 582 (2d Cir.1991). If the respective products serve the same purpose, fall within the same general class, or are used together, the use of similar designations will be more likely to cause confusion. *Ibid.* Assessment of this competitive proximity involves an analysis of the market for the product at issue, *Cullman Ventures, Inc. v. Columbian Art Works, Inc.,* 717 F.Supp. at 129, including the examination of the differences in the products' content, style, geographic distribution, market position and audience appeal. *C.L.A.S.S. Promotions v. D.S. Magazines, Inc.,* 753 F.2d 14, 18 (2d Cir.1985). Here, the products at issue—the plaintiff's "chemically-treated cloths for cleaning lacquered and enamelled finishes," and the defendants' chemical solution for "cleaning preparation, polish and protective coating for automotive vehicles, metal surfaces, fiberglass and glass"—serve relatively similar purposes in that both are utilized in cleaning and polishing automotive and like finishes. However, such relative proximity of the products is mitigated by the differences in their appearance, size, content and marketing channel which indicate a competitive distance between them. As already noted, the appearance, size and content of the parties' products differ significantly. In addition, while the plaintiff's products are marketed through mail order and retail, the defendants utilize direct marketing techniques in which the product is demonstrated in person to potential purchasers. Yanke Declaration, at 11. Moreover, the products are priced at different ranges—the plaintiff's product being $8.95 to $10.95 each in contrast to the defendants' $36.95 per bottle. *Ibid.*

■ The plaintiff has made no showing of the next factor, actual confusion. Although actual consumer confusion is difficult to establish and is not necessary to a finding of likelihood of confusion, no evidence of confusion for over a period of several years is "a strong indicator that the likelihood of confusion is minimal." *Plus Products v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1006 (2d Cir.1983). Here, after more than two years of concurrent use—*see* Yanke Declaration, at 2—, the plaintiff's failure to demonstrate instances of actual confusion significantly weighs against a finding of a likelihood of confusion.

■ The good faith *vel non* of a defendant is a factor to be considered in seeing "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang v. Retirement Living Pub. Co., Inc.,* 949 F.2d at 583. Selection of a mark that reflects the product's characteristics is one of the factors that support a finding of good faith. *Ibid.* Here, the name "DRI WASH" reflects characteristics of the defendants' product—*viz.,* a waterless car wash. The plaintiff's registration of the mark and the defendants' constructive notice thereof do not *per se* give rise to an inference of bad faith, for adoption of a trademark, even with actual knowledge of another's prior registration of a very similar mark, may still be consistent with good faith. *See id.,* at 583–584. The plaintiff claims that the defendants' continued use of the mark after being warned that the plaintiff considered it to be infringing

creates an inference of bad faith. However, the United States Supreme Court has stated the following:

> "Furthermore the defendants' persistence in their use of the design after notice proves little or nothing against them. They had been advertising their goods by name and using the design in connection with the name. The natural interpretation is not that they wanted to steal the plaintiff's goodwill of which they then learned for the first time, but that they wished to preserve their own. * * * If the defendants' conduct was a wrong, * * * it was a wrong knowingly committed, but no further inference against the defendants can be drawn from the fact." *Straus v. Notaseme Co.*, 240 U.S. 179, 181–182, 36 S.Ct. 288, 288–289, 60 L.Ed. 590 (1916).

The next factor measures the sophistication of the consumers. Lack of pertinent naivete usually militates against a finding of likelihood of confusion. *Centaur Communications v. A/S/M Communications*, 830 F.2d at 1228. The plaintiff states that consumers should not be expected to exercise great care in purchasing the products in question because the respective goods are generally low cost, typically costing under $10 and, such items often being ordered from an advertisement, the purchasers do not have an opportunity to review the products carefully. Memorandum in Support of Kozak's Motion for Preliminary Injunction, filed March 18, 1993, at 14. However, contrary to such assertion, it has been indicated that the defendants' product costs $36.95 per bottle and is presently sold exclusively by direct marketing in which the product is individually demonstrated on a potential customer's car. Yanke Declaration, at 11. The plaintiff does not allege that purchase under such circumstances would be casual and unsophisticated.

The plaintiff does not address the two remaining *Polaroid* factors—namely, the likelihood that the prior user will bridge the gap and the quality of the defendants' product. This Court notes that the gap to be bridged in this case may not be a significant one, for the respective items serve relatively similar purposes. Nonetheless, beyond such observation, there is no indication in the record that the plaintiff is likely to offer merchandise of the type sold by the defendants and there has not been any showing that the defendants' product is inferior in quality to the plaintiff's.

Having considered the above factors and weighing each in light of the totality of the findings, this Court concludes that the plaintiff has failed to establish the likelihood of confusion. The plaintiff also has not succeeded in demonstrating a balancing of the hardships tipping decidedly in its favor. The plaintiff contends that the balance of equity weighs clearly in its favor because the registration of its mark constituted a constructive notice to the defendants of the existence of the plaintiff's mark. However, such generalized contention, without more, does not suggest the decisive tilt in degree of hardships of the respective parties as required for granting of preliminary injunction in the absence of a showing of the likelihood of success.

Accordingly, it is hereby *ORDERED* that the plaintiff's motion for a preliminary injunction, or, alternatively, for partial summary judgment on the issue of liability is denied.